BARTELS, Respondent, *v.* DAVIS et al., Appellants.

(No. 2,268.)

(Submitted June 7, 1906. Decided June 22, 1906.)

*Mortgages—Foreclosure — Contracts — Separate Instruments— Construction—Pleadings—Issues Raised.*

Contracts—Separate Instruments—Construction—Mortgages.
   1.   Where a note, deed and defeasance were all executed at the same time, had reference to the same subject matter, and were a part of the same transaction, the deed being intended as a mortgage to secure the note, the three instruments should be construed as one, as provided by Civil Code, section 2207.

Notes—Maturity—Rights of Payee.
   2.   Upon the maturity of a note the payee has an absolute right to demand payment of the debt in full, and he may not legally be compelled to accept a part payment only.

Mortgages—Defeasance Agreement—Obligation of Mortgagee.
   3.   Defendants, on May 14, 1903, executed a note to plaintiff, due six months after date. Defendants also executed a deed conveying

a number of lots to plaintiff to secure the note, and plaintiff executed a defeasance agreement reciting that, one of the defendants desiring to sell from time to time "during the life of this agreement" certain portions of the property conveyed, plaintiff would convey to any purchaser so obtained, on receipt of fifty dollars per lot, to be applied on the note. *Held*, that the phrase "during the life of this agreement" was intended to designate the period of time during which the defendants, without having breached the contract themselves, might rightfully have demanded performance of its terms by the other party to it, to-wit, six months after May 14, 1903, or to and including November 14th, and that plaintiff was not bound, on November 15th, to either accept a partial payment of the debt due or convey a portion of the mortgaged property.

Pleadings—Answer—Denial—Issues.

4.   A denial, in an answer to a complaint to foreclose a mortgage, that there was anything due to plaintiff at the time of the commencement of the action, is the denial of a mere conclusion of law, and does not raise any issue.

Pleadings—Admission of Material Allegations—General Denial—Effect.

5.   Where the answer to a complaint in a foreclosure suit admits all the material allegations of the complaint, a general denial is of no legal effect.

*Appeal from District Court, Silver Bow County; Geo. M. Bourquin, Judge.*

ACTION by E. J. Bartels against Vernie A. Davis and another. From a judgment for plaintiff, defendants appeal. Affirmed.

*Messrs. McBride & McBride,* for Appellants.

The life of the note extends for eight years after its maturity, unless sooner extinguished by payment, or merged in a judgment. The life of the Bartels agreement to reconvey extends for eight years after its date, the time within which an action could be maintained thereon, or until said agreement had been merged in a judgment. The limitation of the statute is the same for each. The note has no advantage over the agreement. The writings are, before the law, of equal dignity. We submit the following as illustrating the meaning of the term "life of agreement": Mr. Webster, in his dictionary, published in the year 1891, gives the following definition of the word "life": "Life of an execution; the period when an execution is in force, or before it expires." (Webster's Dictionary, 1891, p. 663.) "Life, the period of efficient force; as, the life of a part-

nership; life of a lease; life of a ship." (Standard Dictionary, p. 1028.) "Reviving; to impart new life; to renew; to make operative once more; to restore original force to; as, to revive a debt, a suit, a judgment. Revival; the act of giving new life or efficiency to that which has lain dormant, been abated, or has or will become outlawed." (Anderson's Dictionary of Law, p. 902.) "The life of a judgment is the period within which it may be enforced. This limitation is prescribed by statute." This definition of the life of a judgment is illustrated in the case of *Peters* v. *Vawter,* 10 Mont 201, 25 Pac. 438.

*Mr. J. J. Lynch,* and *Mr. Peter Breen,* for Respondent.

The first defense contained in the answer of the defendants, after admitting the execution and delivery of the note and mortgage described in the complaint, and that the note has not been paid, denies that there is anything due on the said note. The pleading is clearly vicious, frivolous and insufficient. (*Hook* v. *White,* 36 Cal. 299; *Power* v. *Gum,* 6 Mont. 5, 9 Pac. 575; *Stewart* v. *Budd,* 7 Mont. 573, 19 Pac. 221; *Merrigan* v. *English,* 9 Mont. 113, 22 Pac. 454, 5 L. R. A. 837; *Watson* v. *Lemen,* 9 Colo. 200, 11 Pac. 88; *Lake* v. *Steinbach,* 5 Wash. 659, 32 Pac. 767; *Columbia Nat. Bank* v. *Western I. & S. Co.,* 14 Wash. 162, 44 Pac. 145; 2 Estee's Pleadings, sec. 3508.)

The contract, standing alone, is of indefinite duration, and ordinarily a contract of indefinite duration may be terminated at the pleasure of either party to it. (*Cumberland Valley R. Co.* v. *Gettysburg etc. Ry. Co.,* 177 Pa. St. 519, 35 Atl. 952; *St. Louis etc. Ry. Co.* v. *Mathews,* 64 Ark. 398, 42 S. W. 902, 39 L. R. A. 467; *Sullivan* v. *Detroit etc. Ry. Co.,* 135 Mich. 661, 106 Am. St. Rep. 403, 98 N. W. 756, 64 L. R. A. 673; *Christensen* v. *Pacific Coast Borax Co.,* 26 Or. 302, 38 Pac. 127; *Barney* v. *Indiana Ry. Co.,* 157 Ind. 228, 61 N. E. 194; *Chattanooga etc. Ry. Co.* v. *Cincinnati etc. Ry. Co.,* 44 Fed. 456; *Vicksburg Liquor & Tobacco Co.* v. *United States Exp. Co.,* 68 Miss. 149, 8 South. 332; *Baldwin* v. *Kansas City etc. Ry. Co.,* 111 Ala. 515,

20 South. 349; *Lawrence* v. *Robinson,* 4 Colo. 567; *Irish* v. *Dean,* 39 Wis. 562; *Sibbald* v. *Bethlehem Iron Co.,* 83 N. Y. 378, 38 Am. Rep. 441; *Cumberland Bone Co.* v. *Atwood Lead Co.,* 63 Me. 167; *Butler* v. *Smith,* 35 Miss. 457; *Echols* v. *New Orleans etc. R. Co.,* 52 Miss. 610; *Davis* v. *Barr,* 12 N. Y. St. Rep. 111; *Coffin* v. *Landis,* 46 Pa. St. 426; *Beers* v. *North Milwaukee Townsite Co.,* 93 Wis. 569, 67 N. W. 936; *Burton* v. *Kipp,* 30 Mont. 275, 76 Pac. 563.) But in order to ascertain the true intention of the parties the contract and note, being practically contemporaneous instruments between the same parties, one referring to the other, relating to the same subject matter and parts of one transaction, must be construed together. (Civ. Code, Mont., sec. 2207; Lawson on Contracts, sec. 389; *Meyer* v. *Weber,* 133 Cal. 861, 65 Pac. 1110; *Talbott* v. *Heinze,* 25 Mont. 4, 63 Pac. 624; *Cornish* v. *Wolverton,* 32 Mont. 456, 108 Am. St. Rep. 598, 81 Pac. 5.)

It is apparent that the agreement expired on the fourteenth day of November, 1903, the day the note matured. The time the note had to run fixed by the plainest implication the duration of the contract. (*Cumberland Valley Ry. Co.* v. *Gettysburg etc. Ry. Co.,* 177 Pa. St. 519, 35 Atl. 952.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On May 14, 1903, Vernie A. Davis and Sewell W. Davis executed and delivered to E. J. Bartels their promissory note for $300, due six months after date, with interest at two per cent per month, and to secure the payment of said principal and interest at the same time executed and delivered to Bartels a deed, absolute on its face, conveying to him a large number of city lots located in the city of Butte. Contemporaneously with the execution of the note and deed there was executed by Bartels and Vernie A. Davis a defeasance agreement which refers to the note and deed, declares that the deed was intended only as security for the payment of the $300 and interest represented by the note, and then contains these recitals:

"Whereas, the said Vernie A. Davis desires the right to sell from time to time during the life of this agreement, such portions of said property as she may be able to find a purchaser for, it is agreed, by and between the parties hereto, that upon the said Vernie A. Davis finding a purchaser for any one or more of the said lots hereinabove described, that the said first party will make, execute and deliver to the purchaser thereof, a proper conveyance, transferring said lot to said purchaser, upon the said Vernie A. Davis paying to the said E. J. Bartels, for each lot so sold the sum of fifty ($50.00) dollars, the said amount paid to apply upon the note hereinabove referred to.·

"It is further expressly understood and agreed, that in the event of the said Vernie A. Davis paying or causing to be paid to the said E. J. Bartels, the amount of the said note, principal and interest, that thereupon the said E. J. Bartels will reconvey to the said Vernie A. Davis or to the party named in writing by her, all of the real property hereinabove described, which shall not at said time have been sold under the terms of this contract hereinabove contained."·

On November 25, 1903, Bartels commenced this action to foreclose the mortgage, alleging that the deed was intended to be and was in fact a mortgage, and that no part of the principal or interest represented by the note had been paid. The complaint is in the usual form. The defendants answered admitting the due execution and delivery of the note and deed; that the deed was understood to be a mortgage, and that no part of the principal or interest represented by the note and secured by the mortgage had been paid. The answer contains a denial that there is anything due to the plaintiff from the defendants, or either of them, and a general denial of all the allegations of the complaint not specifically admitted or denied. The answer then sets forth as an affirmative defense the facts that the defeasance agreement was executed as herein set forth; that on November 15, 1903, a purchaser was procured for two of the lots described in the deed; that thereupon $100 was tendered to Bartels and demand was made upon him that he execute to

such purchaser a deed for said lots; that Bartels refused to do so and claimed that he (Bartels) was the owner of the lots; and that by reason of Bartels' refusal to accept such tender and convey said lots and otherwise comply with the terms of such defeasance agreement, the defendant Vernie A. Davis suffered damages in the sum of $1,000. The prayer of the answer is that Vernie A. Davis be decreed to be the owner of the lots described in the deed and entitled to a conveyance thereof from Bartels, that she recover judgment against him for $1,000, and that he be adjudged not entitled to recover any sum of money whatever from either of the defendants. Plaintiff thereupon moved for judgment on the pleadings, upon the ground that the answer is frivolous, that it does not contain any denial of any material allegation of the complaint; and that it does not state facts sufficient to constitute a defense or counterclaim. This motion was sustained and judgment entered on the pleadings in accordance with the prayer of the complaint. From that judgment the defendants appealed.

In that portion of the defeasance quoted above, appears this language: "Whereas, the said Vernie A. Davis desires the right to sell from time to time during the life of this agreement," etc. The only question propounded for our solution is: What does the phrase "during the life of this agreement" mean? Appellants earnestly contend that the life of the agreement extended over a period of eight years—the period fixed by the statute of limitations for the enforcement of the contract by plaintiff—or until the agreement was extinguished by payment of the debt or was merged in a judgment.

The note, deed, and defeasance all relate to the same matter and are to be taken and construed together. (Civil Code, sec. 2207.) It is not contended that the defeasance agreement had the effect of extending the time for the maturity of the note. It is conceded that the note matured on November 14, 1903. The note, deed, and defeasance all refer to the same subject matter, and, in contemplation of law, constitute one agreement. (*Cornish* v. *Woolverton,* 32 Mont. 456, 108 Am. St. Rep. 598,

81 Pac. 4; 7 Cyc. 582, and cases cited.) This is likewise conceded by appellants in their brief. This being so, the appellants, by their contention, place themselves in this somewhat awkward situation. In effect they say to Bartels: "We confess that we violated the terms of this agreement by our failure to pay the note on or before its maturity, but, notwithstanding our breach, we insist that you shall scrupulously keep or perform the agreement in all things by you to be kept or performed." It is elementary that upon the maturity of the note, Bartels had an absolute right to demand payment of the debt in full, and it would be altogether absurd to say at the same time, that he could be legally compelled to accept a part only.

The one thing which the appellants bound themselves to do by this contract was to pay Bartels $300 with interest on or before November 14, 1903, and with respect to this they wholly failed to keep their agreement. The term or duration of the contract, so far as the Davises were concerned at least, was fixed at six months, or to and including November 14th. In view of these considerations, and in the absence of anything to indicate a contrary purpose, we hold that when the phrase "during the life of this agreement" was used, it was intended to designate the duration of the agreement, that is, the period of time during which the appellants, without having breached the contract themselves, might rightfully demand performance of its terms by the other party to it. Bartels was not bound to accept a partial payment of the debt after the maturity of the note, and the duty imposed upon him to execute the deed for the lots being conditioned upon the payment to him of $50 for each lot so sold, there was, therefore, no obligation whatever resting upon him to execute the deed for the two lots on November 15, 1903, after the debt had matured and the time had arrived when he could rightfully demand payment in full.

It goes without saying that the provision for payment to Bartels of $50 for each lot sold as a condition precedent to his making a deed means payment at such time and under such circumstances that he was legally bound to accept it. As he was

not under obligation to accept a partial payment after the maturity of the note, he did not violate any legal right of the appellants in refusing acceptance and refusing to execute the deed, and therefore his refusal could not give rise to any claim for damages.

What is here said is to be understood only in view of the matters disclosed by this record. Whether the tender made before suit was brought, if kept good, would have operated to stop the interest on the $100, need not be considered. The answer does not allege that the tender was kept good. The denial that there was anything due to the plaintiff at the time of the commencement of this action is the denial of a mere conclusion of law, and does not raise any issue. Neither was the general denial in the answer of any effect, for the answer admits all the material allegations of the complaint.

We are of the opinion that the answer did not state any defense or counterclaim, and that the court properly rendered judgment on the pleadings. The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY concurs.

MR. JUSTICE MILBURN, not having heard the argument, takes no part in the foregoing opinion.

