# UNITED STATES FIDELITY & GUARANTY CO. v. AMERICAN BONDING CO.

No. 2565.   Opinion Filed November 14, 1911.

Rehearing Denied March 12, 1912.

(122 Pac. 142.)

1. DEPOSITARIES—Deposits of Public Moneys—Bonds—Construction. Where a bond for $100,000 executed pursuant to an act approved March 8, 1901 (Sess. Laws 1901, sec. 26, p. 58), in part read: ''Now, therefore, the condition of the above obligation is such that if the said Capitol National Bank shall promptly collect all drafts, checks and certificates of deposit which may be delivered to said depository by the Territorial Treasurer for collection and if said Capitol National Bank shall at all times as safely keep and have forthcoming when required all moneys of the territory of Oklahoma, so collected in said bank; and shall in all respects duly account for all moneys according to law and shall also pay all drafts or checks that may be issued to the Territorial Treasurer by said depository and shall in all respects conform to all of the provisions of a certain contract entered into upon the 6th day of March, 1903, by Cassius W. Rambo, as Treasurer of the territory of Oklahoma, party of the first part, and the said Capitol National Bank, party of the second part, for the period of one year beginning on this 6th day of March, 1903, then this obligation to be null and void; otherwise to be and remain in full force and effect,''—held, in a suit for contribution on said bond, that, ''and shall in all respects conform to all of the provisions of a certain contract entered into upon the 6th day of March, 1903, by Cassius W. Rambo, as Treasurer of the territory of Oklahoma, party of the first part, and the Capitol National Bank, party of the second part,'' should be read as though in parenthesis. Held, also, that the duration of the risk on said bond extended to March 6, 1904, only, and that the insolvency of the bank pending the duration of said risk was not a breach of said bond.

2. SAME—Effect of Binder. In a suit for contribution on a ''binder'' which read: ''In consideration of the sum of seventy-five and no-100 dollars, the United States Fidelity and Guaranty Company

hereby guarantees the fidelity of Capitol National Bank, in the sum of twenty-five thousand dollars, in favor of territory of Oklahoma as depository in the employ of said —————— subject to all the covenants and conditions set forth and expressed in the bond of this company to be issued on even date herewith, and forwarded from the home office within fifteen days from date of issue. This instrument shall date from its countersigning by the general agent, but all liability of the company hereunder shall cease and determine on the issuance by the company of the said duly executed bond, or if the bond is not issued on the fifteenth day from the countersigning of said instrument by the general agent. City, Oklahoma City. State, Oklahoma. John R. Bland President. Geo. R. Callis, Secretary. [Seal.] March 30, 1904. Countersigned: T. M. Upshaw, Gen. Agent''—assuming that ''subject to all the covenants and conditions set forth and expressed in the bond of this company'' had reference to, and the same ''should be construed as if it contained the terms and conditions of the bond prescribed by an act approved March 8, 1901( Sess. Laws 1901, sec. 26, p. 58), **held**, that the same failed to constitute a valid executory contract to make said bond, in that the minds of the parties thereto failed to meet upon the duration of the risk.

(Syllabus by the Court.)

*Error from District Court, Logan County;*
*A. H. Huston, Judge.*

Action by the American Bonding Company against the United States Fidelity & Guaranty Company. Judgment for plaintiff, and defendant brings error. Reversed.

*Flynn, Ames & Chambers,* for plaintiff in error.

*Edward Duffy, Henry E. Asp, Devereux & Hildreth,* and *Dale, Bierer & Hegler,* for defendant in error.

TURNER, C. J. This is a proceeding in error to review a decree whereby the American Bonding Company, defendant in error, recovered judgment against the United States Fidelity & Guaranty Company, plaintiff in error, in the district court of Logan county for $30,902.51, contribution as co-surety for the Capitol National Bank of Guthrie to the territory of Oklahoma.

The record discloses: That on March 6, 1903, said bank, having theretofore been appointed by the then Treasurer of said territory one of the depositories for moneys belonging to said territory, pursuant to an act of the Territorial Legislature ap-

proved March 8, 1901 (Sess. Laws 1901, sec. 26, p. 58), said
Guaranty Company executed to the territory as surety for said
bank a bond which reads:

"Know all men by these presents:    That we, the Capitol
National Bank of Guthrie, Oklahoma Territory, as principal, and
the United States Fidelity and Guaranty Company of Maryland,
a corporation of the state of Maryland having its principal office
in the city of Baltimore, Maryland, as surety, are held and firmly
bound unto Cassius W. Rambo, as Treasurer of the territory of
Oklahoma, in the full and just sum of one hundred thousand
($100,000.00) dollars, to the payment of which well and truly
to be made we bind ourselves and our successors and assigns,
jointly and severally firmly by these presents.    Sealed with our
seals and dated this 6th day of March, A. D. 1903.

"Whereas, Cassius W. Rambo, as Treasurer of the territory
of Oklahoma, has appointed the Capitol National Bank of Guth-
rie, Oklahoma Territory, one of the depositories for the period
of one year beginning this 6th day of March, 1903, in which may
be deposited the moneys belonging to the territory of Oklahoma,
and it was made a condition of said appointment that this bond
should be given to the said C. W. Rambo as Treasurer of the
territory of Oklahoma:

"Now therefore, the condition of the above obligation is
such that if the said Capitol National Bank shall promptly collect
all drafts, checks and certificates of deposit which may be deliv-
ered to said depository by the Territorial Treasurer for collection,
and if the said Capitol National Bank shall at all times safely
keep and have forthcoming when required all moneys of the terri-
tory of Oklahoma, so collected in said bank; and shall in all
respects duly account for all moneys according to law and shall
also pay all drafts or checks that may be issued to the Territorial
Treasurer by said depository and shall in all respects conform
to all of the provisions of a certain contract entered into upon the
6th day of March, 1903, by Cassius W. Rambo as Treasurer of
the territory of Oklahoma, party of the first part, and the said
Capitol National Bank, party of the second part, for the period
of one year beginning on this 6th day of March, 1903, then this
obligation to be null and void; otherwise to be and remain in
full force and effect.    Provided that if the United States Fidelity
and Guaranty Company of Maryland shall so elect, this bond
may be canceled at any time by giving one month's notice to C.
W. Rambo, Treasurer of the territory of Oklahoma, in writing
and refunding the premium to the Capitol National Bank less a

*pro rata* part thereof for the time this bond shall have been in force, remaining liable for all or any default covered by this bond which may have been committed by the said Capitol National Bank up to the date of the cancellation of this bond first hereinbefore provided.

"In testimony whereof said principal and said surety have caused these instruments of writing to be signed by their respective, duly authorized officers and their corporate seal to be hereunto affixed the date and year first above written. Capitol National Bank, Guthrie, Oklahoma, Chas. E. Billingsley, Principal. [Seal.] The United States Fidelity and Guaranty Company, by Edw. J. Penniman, 2nd Vice President; by W. W. Wymington, 3rd Ass't Secretary. [Seal.] Witness: G. A. Nelson."

That on March 10, 1903, said Bonding Company executed for the same purpose a similar bond for $250,000 to run indefinitely. That on March 30, 1904, T. M. Upshaw, general agent of said Guaranty Company, executed and delivered to the territory a "binder," which reads:

"In consideration of the sum of seventy-five and no-100 dollars, the United States Fidelity and Guaranty Company hereby guarantees the fidelity of Capital National Bank, in the sum of twenty-five thousand dollars, in favor of territory of Oklahoma as depository in the employ of said ——— subject to all the covenants and conditions set forth and expressed in the bond of this company to be issued on even date herewith, and forwarded from the home office within fifteen days from date of issue. This instrument shall date from its countersigning by the general agent, but all liability of the company hereunder shall cease and determine on the issuance by the company of the said duly executed bond, or if the bond is not issued on the fifteenth day from the countersigning of said instrument by the general agent. City, Oklahoma City. State, Oklahoma. John R. Bland, President. Geo. R. Callis, Secretary. [Seal.] March 30, 1904. Countersigned: T. M. Upshaw, Gen. Agent."

That on March 5, 1904, the balance due the territory on deposit with the bank was $306,902.13, on March 29, 1904, $244,804.59, and on April 4, 1904, $244,053.21, and that the bank was insolvent prior to March 5, 1904, and closed its doors April 4, 1904. The record discloses that on May 25, 1904, the territory brought suit against said Bonding Company on its said bond of $250,000 for $244,804.59, the full amount of its deposit in said

bank at the time of its failure, and that judgment was rendered therefor, but which was afterwards set aside, and a compromise judgment for $97,621.29, which was paid, rendered and entered, wherein the Bonding Company "assigned, set over, and delivered to the territory of Oklahoma all of its interest, of every kind whatsoever, in and to any and all assets of the Capitol National Bank." That thereafter said Bonding Company brought this suit upon the presumption that the Guaranty Company was liable to contribute to it one-third of what it had thus paid, on the theory that its bond being $250,000, and the cumulative liability on said bond and "binder" of the Guaranty Company $125,000, their respective liabilities stood in the relation of two to one. This was the view of the trial court, which, in effect, held that the Guaranty Company was liable to pay to the Bonding Company $29,974.24 on its bond for $100,000, and $928.27 on the "binder," and rendered and entered judgment accordingly. To reverse said judgment, this proceeding in error was commenced.

To escape liability, the Guaranty Company contends that as the bond on its face expired March 6, 1904, and the evidence discloses no demand by the territory dishonored by the bank prior to that time, there was no breach of the bond, and hence the judgment is contrary to law. As it seems to be conceded that there was no dishonor of such demand, the question now presented is, from the face of the bond, How long did it run, or what was the duration of the risk? It was "sealed with our seals and dated this 6 day of March, A. D. 1903." As the bank was designated such depository for one year only, during which time only the moneys of the territory could be therein lawfully deposited by its treasurer (all italics are ours), it read:

"Whereas, Cassius W. Rambo, as Treasurer of the territory of Oklahoma, has appointed the Capitol National Bank of Guthrie, Oklahoma Territory, one of the depositories *for the period of one year beginning this· 6th day of March, 1903,* in which may be deposited the moneys belonging to the territory of Oklahoma; and it was made a condition of said appointment

that this bond should be given to the said C. W. Rambo as Treasurer of the territory of Oklahoma."

It further reads:

"Now, therefore, the condition of the above obligation is such that if the said Capitol National Bank shall promptly collect all drafts, checks and certificates of deposit which may be delivered to said depository by the Territorial Treasurer for collection and if said Capitol National Bank shall at all times safely keep and have forthcoming when required all moneys of the territory of Oklahoma, so collected in said bank; and shall in all respects duly account for all moneys according to law and shall also pay all drafts or checks that may be issued to the Territorial Treasurer by said depository and shall in all respects conform to all of the provisions of a certain contract entered into upon the 6th day of March, 1903, by Cassius W. Rambo as Treasurer of the Territory of Oklahoma, party of the first part, for the period of one year, beginning on this 6th day of March, 1903, then this obligation to be null and void; otherwise to·be and remain in full force and effect."

Favoring liability, it is contended that no limit is fixed on its face for the life of the bond or the duration of the risk; that, such being true, all moneys therein deposited within one year from its date could of right thereafter remain in the bank for an indefinite time during which they were under the protection of the obligation of the bond, and until the territory saw fit to withdraw them, and that as said bank failed on April 4, 1904, the bond must respond for deposit of the territory then on hand; and, further, that "for the period of one year beginning on this 6th day of March, 1903," related to·the next antecedent, and referred to the contract as descriptive of it, and was not intended to limit the duration of the risk. On the other hand, it is contended that the life of the bond is fixed on its face by those same words, which do not refer to the contract or the last antecedent, but were intended to and do limit the duration of the risk thereon as though it read:

"Now, therefore, the condition of the above obligation is such that if the said Capitol National Bank shall promptly collect all drafts, checks and certificates of deposit which may be delivered to said depository by the Territorial Treasurer for col-

lection, and if said Capitol National Bank shall at all times safely keep and have forthcoming when required all moneys of the territory of Oklahoma, so collected in said bank; and shall in all respects duly account for all moneys according to law and shall also pay all drafts or checks that may be issued to the Territorial Treasurer by said depository (and shall in all respects conform to all of the provisions of a certain contract entered into upon the sixth day of March, 1903, by Cassius W. Rambo as Treasurer of the territory of Oklahoma, party of the first part) for the period of one year beginning on this 6th day of March, 1903, then this obligation to be null and void; otherwise to be and remain in full force and effect."

With the latter view we concur. The act prescribing the conditions of this bond did not fix the faithful performance of said contract as one of those conditions. On this point said act provided that said bond "shall be conditioned to secure the prompt collection of all drafts, checks and certificates of deposit which may be delivered to such depository by the Territorial Treasurer for collection, and also for the keeping and prompt payment on the order or check of the Territorial Treasurer of all funds so collected and of all moneys so deposited, and also for the payment of all drafts or checks that may be issued to the Territorial Treasurer by such depository." Comparing the act and the bond, we see in the latter fixing its conditions a strict compliance with the act down to and including the second use of the word "depository."

It seems that here the intent of the draftsman was to interpolate a condition wholly foreign to the requirements of said act, which he did by inserting "and shall in all respects conform to all provisions of a contract entered into upon the 6th day of March, 1903, by Cassius W. Rambo, as Treasurer of the territory of Oklahoma, party of the first part," and then to stop and renew the continuity of thought dropped at said word "depository," and expressed thus far in the sentence providing for collecting, safe-keeping, and disbursing the money by the bank, and then pass on and limit the obligation so to do for the life of said contract only, or, as he expressed it, "for the period of one year beginning on the 6th day of March, 1903." This intent is made

clear by inserting parentheses as ·we have done, *supra,* by the use of which is indicated the part to be excluded from a sentence or to indicate an interpolation.   Web. Inter. Dict.

· To give effect to the whole, or to make clear the intent, the use of parentheses is permissible.   Speaking of an act of Parliament, Lord Kenyon, C. J., in *Doe d. Willis v. Martin* (1790) 4 T. R. 39, at page 65, said:

"By putting stops or using the parenthesis, as pointed out by the plaintiff's counsel, it becomes perfectly clear; and we know that no stops are ever inserted in acts of Parliament, or in deeds; but the courts of law, in construing them, must read them with such stops as will give effect to the whole."

We see no reason why the same rule should not apply in construing other written instruments, or that other proper punctuation marks may not be used where, as here, the meaning seems otherwise doubtful.   17 Am. & Eng. En. Law, 20.

In *Early v. Wilkinson & Hunt,* 50 Va. 68, the court in determining the intent of the signers of the instrument there in question construed the same with and without the use of the brackets, and held the ordinary use of the same to be to inclose a parenthesis, which is declared by lexicographers to be "a sentence so inclosed in another sentence as that it may be taken out without injuring the sense of that which incloses it."   Placing the stops or removing the sentence thus interpolated, and letting flow the continuing of thought dropped at the second use of the word "depository," the intent is apparent on the face of the bond to be to limit its life or the duration of the risk to March 6, 1904, and we shall so hold.   And this for the further reason that the bond, with reference to its cancellation and the return premium, also provides:

"Provided that if the United States Fidelity & Guaranty Company of Maryland shall so elect, this bond may be canceled at any time by giving one month's notice to C. W. Rambo, Treasurer of the territory of Oklahoma, in writing and refunding the premium to the Capitol National Bank less a *pro rata* part thereof for the time this bond shall have been in force remaining liable for all or any default covered by this bond which may have

been committed by the said Capitol National Bank up to the date of the cancellation of this bond first hereinbefore provided."

Which, in view of what we have held, means, of course, that the life of the bond running as it does to March 6, 1904, if the premium was $72, that $6 thereof would be returnable as unearned for every month after cancellation and up to that time, and which would be meaningless and incapable of enforcement if the construction contended for by the Bonding Company, in effect, that the bond on its face was intended to run for an indefinite time, be adopted. For how and upon what basis of calculation, if the moneys so deposited during the year were protected for an indefinite time thereafter by· the obligation of the bond, would the same be canceled so as to give to the Guaranty Company the 'right to return any portion of the premium and escape future liability? As such construction would make it manifestly impossible to give force to this provision of the bond, we refuse to adopt it. All of which would seem to be conclusive of the question of the liability of defendant in error on said bond, and would were it not further contended in favor of liability that the insolvency of the bank prior to March 6, 1904, was a breach of the bond. But the bond is not so conditioned. The insolvency of the bank being certainly within the contemplation of the Legislature when prescribing the conditions of the bond, if such was intended to have been guarded against, it would have been easy to say so, and have the same denominated in the bond. For the reason, among others, that both the statute and the contract provide, in effect, that the territorial moneys shall remain on deposit in the bank until such time as the Territorial Treasurer shall have occasion to use them, the same to. draw interest at the rate of 3 per cent. computed upon daily balance at the end of each month, said moneys in the hands of the bank were a general deposit with the relation of debtor and creditor existing between the bank and the territory. The obligation of the bond, then, to "safely keep" and "have forthcoming when required" had no reference to the identical money so deposited, and the title

thereto passed to the bank. *Bank of Blackwell v. Dean, Assignee, etc.,* 9 Okla. 626, 60 Pac. 226.

In *State of Neb. v. Bartley,* 39 Neb. 364, 58 N. W. 176, 23 L. R. A. 67, it is said:

"It is manifest from an examination of the entire act that a general deposit of the funds was what the framers intended. True, the first section declares that 'the State Treasurer shall deposit, and all times keep in deposit for safe-keeping,' in the banks that shall be designated as depositories, the moneys in his hands belonging to the several current funds, subject to payment on the treasurer's check; but further along, in the same section, the bank receiving and keeping such deposit is required to pay the state not less than 3 per cent. per annum upon the amounts so deposited, and the next section provides, among other things, in substance, that the interest shall be computed on the average daily balances of the public moneys kept on deposit. While the statute mentions 'safe-keeping,' when the several provisions are construed together, it is quite clear that the transaction contemplated does not amount to a special deposit. Whoever heard of that kind of a deposit of money being paid out on checks, or of a banking institution paying for the privilege of holding a special deposit of funds? The identical moneys deposited are not required to be returned. Obviously the bank receiving them had the right to use and control the money as its own. It could loan the funds for the purpose of earning the money with which to pay the stipulated interest due the state. A deposit of state funds, under the provisions of the law, amounts to a loan or investment of the funds so deposited."

In favor of the construction that to "safely keep" referred to and made insolvency of the bank a breach of the bond, the Bonding Company has cited no authority, and we can find none. *Henry County v. Salmon,* 201 Mo. 136, 100 S. W. 20, is against its contention. There the bond provided that the bank "shall faithfully and safely keep all funds," construing which the court held the same to mean that it "should pursue such a safe method of banking as would result in paying the treasurer's checks on presentation and demand, according to the course of banks." As stated, as the bank here is conceded to have paid all such on presentation and demand during the life of its bond, it is apparent that it lived up to the full measure of its obligation as there pre-

scribed, and that, as the moneys constituted a general deposit, a demand on the bank therefor was not only a condition precedent to their recovery in a suit against the bank, but a demand and a refusal to pay a condition precedent to a breach of the bond. *Henry County v. Salmon, supra,* was a suit brought by the county upon a depositary bond executed by Salmon & Salmon, bankers, to secure county funds, and on the point that insolvency was not a breach of the bond, which was to the effect as quoted; *supra,* the court said:

"In a general way, too, it may be said that the long-continued insolvency of Salmon & Salmon does not, at first blush and standing alone, affect the merits of this case one way or the other. And this is so because, while a county court should not knowingly select an insolvent bank as a county depository, yet the statute does not forbid such selection. To the contrary, the solicitude of the statute spends its force on the depositary bonds as a shield of protection. The high financial qualifications of the sureties are set forth in the statutes, and we are unable to see why sureties may not stand sponsors for an insolvent bank as well as a solvent one, provided they choose to take that course."

See, also, *Oeltjen et al. v. People,* 160 Ill. 409, 43 N. E. 610.

We are therefore of opinion, as the record discloses no breach of the bond, that the judgment for contribution thereon is contrary to law.

But the court held the Guaranty Company liable for contribution on its "binder," *supra,* and rendered and entered judgment accordingly. This is also assigned for error as contrary to law. On this point the evidence discloses that on March 30, 1904, which was some time after the expiration of the bond sued on, T. M. Upshaw, the general agent of the Guaranty Company, signed as such and left said "binder" with the Capitol National Bank; that later the bank delivered it to the Territorial Treasurer, who accepted it as such, and to secure deposits in said bank on behalf of the territory; and that when said bank closed its doors on April 4, 1909, he made demand for said moneys then on deposit therein, which was refused. As the authority of Upshaw to thus bind the Guaranty Company was specifically put in issue, and the issue found in favor of plaintiff, and as

there was evidence reasonably tending to sustain such finding, we will not disturb it, but will proceed to determine the legal effect of the instrument. As the testimony also discloses that, besides doing a business of making bonds of the nature of the one sued on, the Guaranty Company was also engaged in the business of making bonds for the fidelity of employees, it is probable that said "binder" was executed on a blank intended to furnish interim insurance of the latter kind, for the reason that it purports to guarantee the fidelity of the bank in favor of the territory as a depository in its employ "subject to all the covenants and conditions set forth and expressed in the bond of this company to be issued on even date herewith." Of course, the "binder" and the bond referred to were thus made a part of one and the same agreement, and should be construed together in determining what the contract of insurance was, and the liability, if any, of the company thereon. *Home Ins. Co. v. Favorite et al.,* 46 Ill. 263. In order to do this, it was necessary for the Bonding Company not only to plead, but prove that contract. It appearing ambiguous on the face of the "binder" whether the bond therein referred to was intended to be when issued a fidelity bond or a bond guaranteeing the safety of deposits, this ambiguity should have been pleaded and the pleader's construction placed upon the "binder," in effect, that a bond of the latter kind was the kind of a bond within the contemplation of the parties to the "binder" (1 South. Code Pl. & Pr. sec. 224), thereby tendering an issuable fact upon that point, and should then have set out such bond as a part of the contract sued on. Having set forth the contract, he should have then assigned the breach relied on, and closed with his prayer. As this was not done or attempted, the Guaranty Company was entitled to have the suit on the "binder" set forth in a separate count, which, as set forth, would have been bad on demurrer. A similar situation existed in *Home Ins. Co. v. Favorite et al., supra.* There, as here, the "binder" was declared on without setting forth the policy to which it referred. Appellants offered the same in evidence for the purpose of making it a part of the contract sued on, and to

show that the same contained a condition which appellee had breached, rendering it null and void. The evidence was excluded, and thereon the court said:

"The refusal of the court below to permit appellants to introduce the blank copy of the policy, and the refusal to give their instructions, present the first question which we propose to consider. If such a policy formed a part of the contract, which was made and delivered, the failure to set out its terms and conditions in the declaration, and to have averred a compliance therewith, or an excuse for a non-compliance, should properly have been taken advantage of upon demurrer."

And so we say that here we are asked to sustain a judgment where the petition fails to state facts sufficient to constitute a cause of action on the "binder," but which was not demurred to on that ground. Under this state of the pleadings, the Bonding Company recovered on the face of the "binder," neither side introducing evidence tending to prove what kind of a bond it was subject to the "covenants and conditions" of, whether a fidelity bond or one guaranteeing the safety of deposits, or attempted to introduce in evidence such bond. But it is insisted in favor of liability that a "binder" such as this constitutes a contract to make a bond subject to the conditions contained in the ordinary bond in use by the company. Granted, and, inasmuch as a "binder" constitutes a contract of insurance subject to the conditions contained in the ordinary policy in use by the company, we will apply the doctrine here if we can. 19 Cyc. 596, says:

"The preliminary agreement not being an executed contract of insurance, but contemplating the issuance of a policy which shall contain in full the terms and conditions of the contract, in order to determine what are the terms and conditions contemplated in the preliminary agreement, it is necessary to ascertain the terms and conditions of such a policy as the company were bound to issue in pursuance of such agreement. But it will be presumed that the policy contracted for was such policy as the company was in the habit of issuing to those contracting for insurance."

In *Hubbard & Spencer v. Hartford, etc.*, 33 Iowa, 325, 11 Am. Rep. 125, speaking to a "binder," the court said:

"It must be conceded that, if it bound the company at all and its binding effect cannot be denied, it raised a contract of insurance in all respects like the contracts of the company as expressed in the policies commonly issued by them. * * * The transaction, then, was a contract for insurance upon the usual terms and conditions as expressed in the policy which the agent was empowered to issue."

There is no dispute as to this doctrine. The difficulty lies in its application here to sustain the judgment. In the absence of any pleading or proof upon the point, we are asked by the Bonding Company to take judicial notice that the bond referred to in the "binder" is the bond required to be issued pursuant to the depository statute, *supra*. Assuming that we can rightfully make this stretch of judicial notice, which was apparently done by the trial court, we have then the whole writing before us, consisting of said "binder" and its conditions prescribed by the statute, and the question for us to determine is whether the same together are sufficiently specific to make out a valid executory contract to execute said statutory bond. Such they are not, for the reason that it nowhere thereby appears that the minds of the parties met on the period of the duration of the bond. And, as the statute prescribes none, we conclude that such was thereby left open, subject to the agreement of the parties. 19 Cyc. 596, says:

"A valid executory contract must, however, be made out, specific either by express terms or by implication, as to the subject-matter, period, rate, and amount of insurance. If there is no specific agreement as to the period of insurance, * * * the contract will not be enforceable"

—citing *Insurance Co. of North America v. Thornton*, 130 Ala. 222, 30 South. 614, 55 L. R. A. 547, 89 Am. St. Rep. 30; *Hartford F. Ins. Co. v. King*, 106 Ala. 519, 17 South. 707; *Pino v. Merchant's Mut. Ins. Co.*, 19 La. Ann. 214, 92 Am. Dec. 529.

In *A. Worth v. German, etc., Ins. Co.*, 64 Mo. App. 583, the court said:

"In order to make a valid contract of insurance, these essential conditions must concur, viz: First. The subject-matter to which the policy is to attach must exist. Second. The risk

insured against.    Third.  The amount of indemnity must be definitely fixed.   Fourth.  The duration of the risk.   Fifth.  The premium or consideration to be paid therefor must be agreed upon and paid, or exist as a valid charge against the party insured, when the payment in advance is not a part of the condition upon which the policy is to attach.   If anything has been left open, no contract exists, because the minds of the parties have not met, and there is not an agreement that can be enforced by either party; and both parties must be bound, the one to insure, and the other to pay the premium."

*Cleveland Oil Co. v. Ins. Society,* 34 Ore. 228, 55 Pac. 435, was a suit upon an alleged executory contract to insure.   The court said:

"It is argued by defendant's counsel that there was no evidence introduced at the trial tending to show the duration of the alleged insurance, the time when the risk should commence or the amount of the premium to be paid, and hence the nonsuit should have been granted."

And, after quoting approvingly from Wood on Fire Ins. (2d Ed) sec. 5, thus:

"In order to make a valid contract of insurance, several things must concur:   First, the subject-matter to which the policy is to attach must exist; second, the risk insured against; third, the amount of the indemnity must be definitely fixed; fourth, the duration of the risk; and, fifth, the premium or consideration to be paid therefor must be agreed upon, and paid, or exist as a valid legal charge against the party insured where payment in advance is not a part of the condition upon which the policy is to attach.   The absence of either or any of these requisites is fatal in cases where a parol contract of insurance is relied upon"

—said:

"It is not the duty of courts to make contracts for parties, but to interpret the engagements they have undertaken, and, in view of this legal principle, the rule is well settled that, before a contract of insurance or to insure can become binding, all these necessary elements must be understood, assented to, and agreed upon, either expressly or by implication, before there can be an absolute binding obligation between the parties.   May, Ins. (3d Ed.) sec. 50; 11 Am. & Eng. Enc. Law (1st Ed.) 282; *Commercial Ins. Co. v. Morris,* 105 Ala. 498, 18 South. 34;

*Sater v. Henry Ins. Co.,* 92 Iowa, 579, 61 N. W. 209; *Hartshorn v. Shoe Ins. Co.,* 15 Gray [Mass.] 240; *Strohn v. Hartford Ins. Co.,* 37 Wis. 625, 19 Am. Rep. 777; *Trustees of First Baptist Church v. Brooklyn Fire Ins. Co.,* 28 N. Y. 153; *O'Reilly v. London Assurance Corp.,* 101 N. Y. 575, 5 N. E. 568; *Orient Ins. Co. v. Wright,* 23 How. 401 [16 L. Ed. 524]."

In *Commercial Ins. Co. v. Morris, supra,* in the syllabus it is said:

"Before a contract of insurance or an agreement to insure is binding between the parties, the property to be insured, the period, rate to be paid, and amount of insurance, and all other essential elements and terms of the contract must be expressly or by implication understood and mutually agreed upon; and the mere expression of a desire by one intending to procure insurance, or a proposition made to an insurance agent to insure property, and the assent or acceptance by such agent to insure, without more, does not amount to a contract of insurance, or to an agreement to insure."

It will not do to say that this was, in effect, a renewal of any other bond of like kind, or that a period of one year specified in the bond sued on was the implied duration of the risk within the contemplation of the parties to the "binder," for the reason that said bond had long since expired, and there is nothing indicating anything understood as governed by previous dealings between the parties. On this point it is further said in the syllabus in the Morris case:

"The mere fact that there have been previous dealings of insurance between the parties, without some reference to such previous dealings, is not sufficient to show a completed and binding contract that the parties intended to and did adopt in their contract subsequently made the provisions and terms of the former transactions; but where there exists a contract of insurance, which has not expired, and there is an agreement between the parties to renew the policy, and no change is suggested or agreed upon, it will be presumed that the renewal contract included and adopts all the provisions of the existing contract of insurance, and such contract is complete and binding upon the parties."

Neither can we know for the purpose of upholding the judgment that $75, the amount of the premium supposed to have been

paid, was for a risk to run one year, and that the same was so understood between the parties, for the reason that there is nothing in the record to so inform us, and we have already exhausted our judicial notice. For the reason that the "binder" "construed as if it contained the terms and conditions of a bond issued in pursuance of the depository statute," as urged, leaves open the duration of the risk, we are of opinion that the minds of the parties hereto failed to meet thereon, and for that reason the alleged contract evidenced thereby was not valid and enforceable, and hence the judgment complained of is contrary to law. We have examined all the cases available upon the subject, and call to mind no case in which a recovery was had where the "binder" failed to limit the duration of the risk.

It is unnecessary to discuss the remaining assignments of error.

The cause is reversed.

All the Justices concur.