STATE, FOR THE USE AND BENEFIT OF BROADWATER COUNTY, APPELLANT, *v.* ROSMAN ET AL., RESPONDENTS.

(No. 6,375.)

(Submitted January 8, 1929. Decided February 25, 1929.)

[274 Pac. 850.]

*Mr. L. A. Foot,* Attorney General, and *Mr. I. W. Choate,* Assistant Attorney General, for appellant, submitted a brief; *Mr. L. V. Ketter,* Assistant Attorney General, argued the cause orally.

*Mr. T. A. Mapes,* for Respondent, submitted a brief and he, and *Mr. Edward Horsky,* of counsel, argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

This action was brought by the state for the use and benefit of Broadwater county to recover of Susan L. Rosman, sometime county treasurer, and Fidelity & Deposit Company of Maryland, the bondsman upon her official bond, the amount of money deposited in the Toston State Bank to the credit of Rosman, treasurer, and lost through the failure of the bank. The trial court rendered judgment for the defendants and the state appealed.

The defendant Rosman was treasurer of Broadwater county from March 5, 1923, to March 5, 1925. On and after the

first Monday of March, 1924, at 12:00 o'clock noon (mountain time) there was on deposit and remained on deposit in the Toston State Bank, hereafter called the bank, to the credit of the county treasurer the sum of $13,115.58 belonging to Broadwater county, which the county treasurer during her term of office and prior to that date had deposited. On April 2, 1924, the bank failed. No part of the deposit has ever been repaid to the county although demand for payment thereof has been made. Counsel for the state take the position that the deposit was permitted to remain in the bank without the protection of an indemnity bond as required by law, this constituting a violation of the defendant Rosman's official duty.

Prior to 1908 it had been the practice of state and county treasurers to deposit the public funds entrusted to them as they pleased. It was well known that the banks paid interest upon deposits, and that the treasurers put the interest in their pockets. The disposition to obtain high rates of interest sometimes caused a treasurer to deposit the public funds in an unsafe bank, with consequent loss to the public, for occasionally it was found that the treasurer's bonds were not sufficient protection.

In 1895 it was enacted that if a county treasurer should deposit any moneys belonging to the state with a bank he should require a bond in double the amount deposited, to be approved by the board of county commissioners. (Sec. 4367, Pol. Code 1895.) The section was amended in 1903 to include "all moneys belonging to the county, and all other moneys by law directed to be paid to him." (Sec. 1, Chap. V, Laws 1903, p. 5; re-enacted as sec. 3003, Rev. Codes 1907.) Nothing said about the interest.

In 1908 the people adopted section 14 of Article XII of the Constitution creating a state depository board, which was given "full power and authority to designate depositories with which all funds in the hands of the state treasurer shall be deposited, and at such rate of interest as may be prescribed by law. When money shall have been deposited under direc-

tion of said depository board and in accordance with the law, the treasurer shall not be liable for loss on account of any such deposit occurring through damage by the elements or for any other cause or reason occasioned through means other than his own neglect, fraud, or dishonorable conduct. * * * "

In 1913 the legislative assembly amended section 3003, supra ■ (sec. 1, Chap. 88, Laws 1913, p. 389), and the same was re-enacted as section 4767, Rev. Codes 1921, which recognized the salutary features of the constitutional provision, quoted above, and made it the duty of each county treasurer to deposit all public moneys in his possession and under his control in such solvent bank or banks located in his county, subject to national or state supervision, as the board of county commissioners should designate, and no other. The banks were required to pay interest on all sums so deposited at the rate of not less than two and one-half per centum per annum, payable quarterly. The treasurer was required to take such security as the board of county commissioners might "prescribe, approve and deem fully sufficient and necessary to insure the safety and prompt payment of all such deposits on demand."

In 1923 the legislative assembly by amendment added to the sentence last quoted the words "together with the interest thereon," and made more specific provisions respecting bonds and securities to be required from the banks. Personal bonds were permitted but it was stipulated "that all such personal bonds must be accompanied by a sworn statement of the resources and liabilities of each of the sureties thereon." It was made the duty of the board of county commissioners, upon the acceptance and approval of bonds or securities, to make a complete minute entry thereof upon the record of their proceedings. It was prescribed that "all such deposits shall be subject to withdrawal by the treasurer in such amounts as may be necessary from time to time, and no deposit of funds shall be made, or permitted to remain in any bank, until the security for such deposits shall have been first approved by the

board of county commissioners * * * and delivered to the treasurer." The section concluded: "Where moneys shall have been deposited in accordance with the provisions of this Act the treasurer shall not be liable for loss on account of any such deposit that may occur through damage by the elements, or for any other cause or reason occasioned through means other than his own neglect, fraud or dishonorable conduct." (Chap. 89, Laws 1923, p. 237.)

Under the terms of the 1913 and subsequent statutes the treasurer is no longer permitted to deposit the county funds where he pleases. He may deposit them only in a bank designated by the board of county commissioners, first requiring an indemnity bond, or other prescribed security, which must be accepted and approved by the board. If he deposits funds otherwise, he does so unlawfully (*Yellowstone County* v. *First Trust & Savings Bank,* 46 Mont. 439, 128 Pac. 596), and is liable upon his official bond. If he complies with the law and the money is lost he is not liable. In such cases he is liable only through his own neglect, fraud or dishonorable conduct. (See *County of Missoula* v. *Lochrie,* 83 Mont. 308, 271 Pac. 710; *State ex rel. Rankin* v. *Madison State Bank,* 77 Mont. 498, 251 Pac. 548.)

Desiring to secure the deposit of county moneys the bank, which carried on a general banking business at Toston and was subject to state examination, in January, 1923, as it had done during a number of preceding years, filed with the board of county commissioners an indemnity bond, which recited, *inter alia,* that whereas the county treasurer had deposited or was about to deposit with the bank moneys to her credit in accordance with the statute, she required an indemnity bond. The condition of the bond is "that if the said Toston State Bank, or said sureties, or either or any of them shall well and truly indemnify and save harmless the said Susan L. Rosman as County Treasurer, her successors in office, and the County of Broadwater, and State of Montana, from all loss and damage of every kind by reason of deposits of such moneys as

heretofore or hereafter made, in or with said bank, between twelve o'clock noon (mountain time), of the date of these presents, and the first Monday in March, 1924, at twelve o'clock noon (mountain time), and if the said principal herein shall, whenever requested, render a full account unto the said County Treasurer, her successor in office or the Board of County Commissioners of said county for all public funds received by it for deposit to the credit of said County Treasurer, or her successor, and for all interest, if any, credited on daily balances of all such deposits, during the time herein stated as aforesaid, and if said principal shall at all times during the continuance of these presents, on demand, promptly pay over to the said County Treasurer, her successor in office, or other representative of the County of Broadwater, State of Montana, lawfully and properly entitled to receive the same, all such moneys as are on deposit with the said bank to the credit of said County Treasurer, or her successor, including interest, if any, credited on daily balances of all such deposits, and if the said principal shall honor and promptly pay upon demand such checks, drafts, or other written orders upon it, duly issued and signed by the said County Treasurer, or her successor in office, unless such payment shall be restrained or prohibited by judicial process, or competent legal authority— then this obligation shall be null and void; otherwise, it shall be and remain in full force and virtue.''

If we ascertain what the law contemplates we must assume that the contract was entered into within that contemplation. The applicable statute is as much a part of the bond as if expressly written into it. (*Home State Bank* v. *Swartz*, 72 Mont. 425, 234 Pac. 281.)

By the clear import of the statute no deposit of funds shall be made, nor permitted to remain, in a bank unless the same is protected by a bond or other security approved by the board of county commissioners.

In this case the treasurer could not lawfully deposit county funds in the bank before the bond was accepted and approved

by the board; and it is equally clear that under the terms of the bond she could not lawfully deposit therein any county funds after 12:00 o'clock noon on the first Monday of March, 1924. Does it follow that she could not lawfully permit any county money to remain in the bank after that hour under the terms of the bond? If this question is answered, yes, it follows that it was the duty of the treasurer to withdraw the money from the bank before 12:00 noon of the first Monday of March, unless on or before that hour another indemnity bond or other security, "deemed fully sufficient and necessary to insure the prompt payment of all such deposits on demand" be required and approved by the board. If it was her duty to withdraw the money and she did not do so and the money was lost, she is liable on her bond. The foregoing is a concrete illustration of the problem now before the court and aids in determining it.

The bank and its sureties had the right to limit the period during which their liability should attach. The bank agreed to indemnify the treasurer from all loss and damage of every kind by reason of deposits made between noon of January 24, 1923, and noon of March 3, 1924, and, whenever requested, to render a full account to the treasurer for all public funds on deposit to her credit and for all interest, if any, credited on daily balances, "during the time herein stated as aforesaid." The bank made itself liable only for deposits made, and for interest accrued thereon, during the time stated as aforesaid. So much is clear. The difficulty arises over the language immediately following the word "aforesaid": "and if said principal shall at all times during the continuance of these presents, on demand, promptly pay over to the said county treasurer * * * all such moneys as are on deposit with said bank to the credit of said county treasurer, or her successor, including interest, if any, credited on daily balances * * * ." What is the meaning of "during the continuance of these presents"?

A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful. (Sec. 7527, Rev. Codes 1921.) The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other. (Sec. 7532, Id.)

"In the interpretation of this contract we must call to our aid certain elementary rules. The intention of the parties is to be pursued if possible. (Sec. 10520, Rev. Codes, 1921.) This intention is to be gathered from the entire agreement, not from particular words or phrases or disjointed parts of it. (*Stockton Savings & Loan Society* v. *Purvis,* 112 Cal. 236, 53 Am. St. Rep. 210, 44 Pac. 561.) 'The subject-matter of the contract and the purposes of its execution are material to the ascertainment of the intention of the parties and the meaning of the terms used, and when they are ascertained, they must prevail.' (6 R. C. L., sec. 226, p. 836.) It must be so interpreted as to give effect to the intention of the parties at the time of contracting. (*Ferry & Co.* v. *Forquer,* 61 Mont. 336, 29 A. L. R. 642, 202 Pac. 193.) The contract must be viewed from beginning to end, and all its terms must pass in review; for one clause may modify, limit, or illuminate the other. (6 R. C. L., sec. 227, p. 838.)" (*Lee* v. *Lee Gold Mining Co.,* 71 Mont. 592, 230 Pac. 1091.)

Unless it was intended that the bond should terminate on March 3, 1924, at noon, what reason can be given for limiting the time within which deposits might be made to that date? Interest on deposits was to run only to that date. If interest was to cease upon that date it would seem that the parties contemplated that the deposits should not remain in the bank after that date. The bank and its sureties agreed that the bank would pay the money on deposit and the interest thereon, on demand. If there is no time limit except the statute of limitations, which runs from demand (sec. 9058, Rev. Codes 1921), why the words "during the continuance of

these presents''? Either the time within which a demand might be made is limited to March 3, 1924, at noon, or there is no limit, except the statute of limitations, and the words ''during the continuance of these presents'' are pure surplusage.

The provision respecting the payment upon demand of such checks, drafts and written orders signed by the county treasurer is significant. It relates undoubtedly to the usual course of business carried on by a treasurer with a depository bank. Note that the amount of deposits is not fixed. It was contemplated that the deposit might change daily. The interest, accruing only prior to March 3, is credited on daily balances. Is it not clearly implied that this payment of checks, drafts and written orders must be on demand made prior to March 3, 1924, at noon?

If the provision ''at all times during the continuance of these presents'' does not mean ''during the time herein stated as aforesaid'' but means that the principal is bound at any time within eight years, on demand, promptly to pay over to the treasurer the moneys on deposit, it also means that the principal shall honor and promptly pay upon demand such checks, drafts or other written orders upon it, issued by the treasurer during that period of time.

In *O'Brien* v. *Murphy,* 175 Mass. 255, 78 Am. St. Rep. 487, 56 N. E. 284, the court said: ''The general rule is that, where there is a recital in the bond specifying the time during which the prescribed duty is to be performed by the principal, and the words of the condition are general and indefinite as to the time for which the surety is to be liable, such general words will be construed as limited by the recital, and the surety will be held liable only for the time therein specified. It is fair to presume that the parties had in contemplation only a liability for the time specified in the recital. (Brandt, Sur., sec. 166; *Arlington* v. *Merricke,* 2 Saund. 403; *Liverpool Waterworks* v. *Atkinson,* 6 East, 507. )'' (9 C. J. 40.)

We have examined the authorities submitted by counsel, and many others, but not in any case do we find a similar bond, except in *Jenkins* v. *First National Bank,* 73 Mont. 110, 236 Pac. 1085, where upon a rehearing the court struck from the opinion a discussion of the bond in suit, being in doubt as to the correctness of what had been said respecting it, dismissing the subject by saying the ''sufficiency of the complaint was not challenged in the trial court and is not properly before us on this appeal.''

We are forced to conclude that the bond before us is not a continuing one, and that as the treasurer did not demand payment of the moneys on deposit to her credit before noon of March 3, 1924, the sureties cannot be held.

It may be argued that as the treasurer had the right to deposit money with the bank up to the last moment of the period prescribed in the bond, necessarily a reasonable time must be allowed to demand repayment. But this argument cannot be tenable in view of the clear policy of the statute: the treasurer was charged with knowledge of the expiration of the bond, and must be held at least to reasonable diligence in depositing the public funds. It would be foolish for a treasurer to deposit money at 11:50 A. M. knowing the bond would expire at 12 M., having no additional bond or other security available to protect the deposit.

Construing all the parts of the contract together the conclusion seems irresistible that the phrase ''during the continuance of these presents,'' though used inaptly, is equivalent to the phrase which immediately precedes it: ''during the time stated as aforesaid.'' In other words, the phrase ''during the continuance of these presents'' means ''during the life of this agreement,'' or ''during the term of this bond.'' (See *Bartels* v. *Davis,* 34 Mont. 285, 85 Pac. 1027.) As further sustaining these views in some measure, see *United States F. & G. Co.* v. *American Bonding Co.,* 31 Okl. 669, 122 Pac. 142; *Fidelity & Deposit Co.* v. *City of Cleburne,* 296 Fed. 643; *Pacific County* v. *Illinois Surety Co.,* 234 Fed. 97.

Much reliance is placed by defendants upon the leading case of *United States F. & G. Co.* v. *City of Pensacola,* 68 Fla. 357, Ann. Cas. 1916B, 1236, 67 South. 87, in which the court held that there was a continuing liability under the depositary bond under consideration. The reasoning of the court appeals to us, but it is not applicable to the case at bar. The bonds are quite dissimilar. The condition of the bond there considered was that the bank "shall faithfully account for and pay over all moneys" deposited by the city during the period contemplated and specified in the bond. The liability in that case was not merely to insure the payment to the city of its deposits during the completed period, but to pay over all moneys received by the bank deposited by the city during the stated period, and this obligation continued though the time had expired during which deposits could be made under the obligation of the bond; "whereas, in the instant case, the life of the bond is fixed on its face, and in view of the express stipulation of the bond it cannot be reasonably contended that liability would extend for an indefinite period during which the funds would be under the protection of the operation of the bond, and until the plaintiffs saw fit to withdraw them." (*Pacific County* v. *Illinois Surety Co.,* supra.)

The judgment is reversed and the cause is remanded to the district court of Broadwater county with directions to enter judgment in accordance with the prayer of plaintiff's complaint. Remittitur forthwith.

MR. JUSTICE GALEN and MR. JUSTICE FORD concur.

HONORABLE WILLIAM H. POORMAN (sitting in place of MR. JUSTICE ANGSTMAN, disqualified):

I think the bond is a continuing one as to deposits made prior to the first Monday in March, 1924, at twelve o'clock noon.

MR. JUSTICE MATTHEWS, being disqualified, did not hear the argument and takes no part in the foregoing decision.