## FIDELITY & DEPOSIT CO. OF MARYLAND v. CITY OF CLEBURNE et al.

(Circuit Court of Appeals, Fifth Circuit. January 5, 1924. Rehearing Denied February 20, 1924.)

### No. 4085.

1. **Depositaries ⬤⟞13—Surety on bond of city depositary held liable during term of bond after expiration of bank's contract as depositary.**

   Where a bond given by a bank in which city moneys were deposited, providing that the term thereof should begin November 20, 1920, and end November 20, 1921, was conditioned that bank should during the term of the bond pay all moneys deposited and not suspend payment, *held* that, though bank's contract as city depository expired August 20, 1921, the surety was liable for bank's failure to account for all funds deposited thereafter until November 20, 1921.

2. **Depositaries ⬤⟞14—Municipal corporations ⬤⟞904(1)—City warrants acquired by city depositary held not paid so that surety on depositary's bond could set them off in action thereon.**

   Where a bank under contract as city depositary cashed warrants on city funds in the bank out of its own money and treated the warrants as assets of the bank and from time to time, as directed by its president,

⬤⟞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

who was also city treasurer, charged the warrants to the proper city accounts and thereupon stamped them as paid, *held*, that the warrants were not paid until they were so charged to the city accounts, and that warrants so acquired by the bank and not so charged, and which were in the hands of other banks as collateral at the time-of the failure of the depositary bank, could not be set off by the surety in an action by the city .on the bond of the latter bank as depositary.

**3. Costs ⬤⟿32(2)—Abuse of discretion held not shown in awarding costs against unsuccessful defendant.**

In action by a city on the bond of the city depositary, *held*, no abuse of discretion shown in awarding costs against the surety, the unsuccessful defendant.

Appeal from the District Court of the United States for the Northern District of Texas; James C. Wilson, Judge.

Suit by the City of Cleburne and others against the Fidelity & Deposit Company of Maryland. Decree for plaintiffs, and defendant appeals. Affirmed.

J. J. Eckford and Albert B. Hall, both of Dallas, Tex., for appellant.

W. R. Walker, of Cleburne, Tex., Charles C. Huff, James Patrick Haven, Joseph Manson McCormick, and E. B. Stroud, Jr., all of Dallas, Tex., and G. W. Wharton, of Fort Worth, Tex., for appellees.

Before WALKER and BRYAN, Circuit Judges, and GRUBB, District Judge.

WALKER, Circuit Judge. On November 20, 1920, the National Bank of Cleburne, Tex. (herein called the Cleburne Bank), as principal, and the appellant, Fidelity and Deposit Company of Maryland, as surety, executed a bond in the sum of $125,000 payable to R. E. Mitchell, mayor of the city of Cleburne, or his successors in office. That bond contained the following:

"Whereas, the said obligee has designated the 'said principal as the depository of city funds for Cleburne, Johnson county:

"Now therefore, the condition of this obligation is such that if the principal shall, during the term of this bond, faithfully account for and pay on legal demand all moneys deposited with it by or on behalf of the said obligee, and shall not suspend payment during the term hereof, this obligation shall be null and void, otherwise to remain in full force and effect.

"Provided, however, and upon the following conditions:

"First. The term of this bond begins on the 20th day of November, A. D. 1920."

The premium for that bond for one year was paid by the city. At the time that bond was executed, the Cleburne Bank was, and for many years prior to that time had been, the depository for the city of Cleburne (herein called the city), under successive contracts, and continued to be such depository up to the date of its failure. The contract which was in existence when the bond was executed was made by the city's acceptance of the following written offer made in August, 1919, by the Cleburne Bank on a form furnished by the city:

"In reply to the notice appearing in recent issues of the Cleburne Daily Enterprise concerning bids for the appointment of city depository for the city of Cleburne, for the ensuing two years, beginning August 20, 1919, and

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ending August 20, 1921, permit us to submit for your consideration the following bid:

"We, the undersigned banking institutions of said city, hereby agree to receive and securely keep all funds, accounts, and moneys belonging to the city, and make no payments out of the same except upon the order of the mayor, attested by the secretary, under the seal of the corporation, and then only when said order shows upon its face that the city council has directed it to be issued and the purpose for which the same was issued.

"We agree to render a full and complete statement of each separate fund, showing the amount received, and the amount paid out of the same, to the city council at their first regular meeting in each month and at such other times as may be required of us. And at the end of each year we agree to furnish the city council a statement showing the amount of receipts and disbursements of each and every fund for the year next preceding, and the general condition of the treasury.

"We agree to pay to the city of Cleburne, on all accounts which show a credit balance, interest at the rate of 6.9 per cent. per annum; said interest to be computed on daily balances and placed to the credit of the accounts which show a credit balance each and every month.

"We agree to carry any overdraft that the city may now have, or might have hereafter, and charge interest thereon at the rate of 3 per cent. per annum.

"If this contract is accepted we agree to give bond in favor of the city of Cleburne in such an amount and in such form as the city council may require, with a solvent bonding company as surety, for the full and complete observance and compliance with this contract, and for the faithful discharge of our duties as such.

"We ask you to appoint Mr. S. B. Norwood, city treasurer for the ensuing term."

On August 20, 1921, the date of the expiration of the period covered by the above-mentioned contract, another contract was made in the same way, the terms and conditions whereof were exactly like those of the above-mentioned contract, except that it covered the immediately succeeding period of two years and provided for different interest rates. Pursuant to each of the contracts, S. B. Norwood, who was the president of the Cleburne Bank, was appointed city treasurer. At the time of the city's acceptance of the Cleburne Bank's bid made in August, 1919, the Cleburne Bank gave a bond as provided in its bid. For some undisclosed reason that bond was canceled and surrendered prior to the making of the above-mentioned bond. The Cleburne Bank became insolvent, was closed, and its property and assets went in the hands of a receiver on October 17, 1921. This suit was brought by the city to enforce the liability under the above-mentioned bond. The appellant, the Cleburne Bank, its receiver, and four other banks were made parties defendant. Involved in the question of the amount for which the appellant was liable as surety was the question as to the status of certain city warrants, some of which, at the time of the failure of the Cleburne Bank, were in its possession, and the remainder whereof were in the possession of the defendant banks, to which severally the Cleburne Bank had assigned some of such warrants as collateral security for loans made by such banks to the Cleburne Bank.

The following contentions were made in behalf of the appellant: That the appellant was not liable under the bond sued on for deposits of moneys of the city in the Cleburne Bank made between August 20, 1921, the date of the expiration of the term for which the Cleburne Bank was appointed city depository in pursuance of the contract made

by the city's acceptance of the above set out bid of the Cleburne Bank made in August, 1919, and October 17, 1921, the date of the failure of the Cleburne Bank. That the city warrants, some of which, at the time of the failure of the Cleburne Bank, were held by it, and the remainder thereof by other defendant banks, had been paid by the Cleburne Bank before its failure, with the result that the amounts of such warrants held by defendant banks other than the Cleburne Bank were subject to be charged or set off against credit balances in favor of the city shown by the Cleburne Bank's books at the time of its failure. A special master was appointed to hear the evidence and to report to the court his conclusions of fact and of law.

The master's report showed as follows: At the time of its failure, the Cleburne Bank's books showed that it had on deposit, to the credit of the several funds of the city, 25 in number, sundry amounts, the aggregate whereof was $177,600.82. The method of handling the city's funds was as follows: The city tax collector collected the taxes and deposited the same in the city depository to his personal and individual credit. From time to time he would draw against the funds so deposited his checks in varying amounts payable to the city secretary. The city secretary would apportion the moneys belonging to the city to the several funds in accordance with instructions of the city council, and deposit the moneys so apportioned to the credit of the proper funds, as carried on the books of the depository. The master's report contained the following:

"The established custom as between the city of Cleburne and the city depository, the National Bank of Cleburne, with reference to warrants drawn by the city, was as follows: The city of Cleburne through its proper officers would draw warrants on the several funds in the bank, all of which were addressed to S. B. Norwood, city treasurer. These warrants passed current the same as a check, and, when presented by the payee or other holder of the National Bank of Cleburne, that bank would pay to such payee or holder the amount of money called for therein. At no time during all the years that the National Bank of Cleburne was city depository and S. B. Norwood, its president, was city treasurer, were the warrants presented to the treasurer and a check on the city depository secured from him. No checks were ever drawn by the city treasurer on the city depository.

"The depository, in charging the account of the city with the amount called for in any warrant, recognized and treated the warrant itself as an order on the depository. When such account was charged with the amount of any warrant, such warrant so charged at the same time was stamped 'paid' and was returned to the city in the same way a check on an account would be stamped 'paid' and returned to a depositor. Until such warrants were stamped 'paid' and charged to the city's account, as aforesaid, the city's funds were left in the same condition after the acquisition of the warrants by the bank as they were before such acquisition. * * *

"When a warrant of the city would be presented at the National Bank of Cleburne, the payee or other holder was required to indorse the warrant. Upon such warrant being properly indorsed, the bank would advance, out of the money belonging to the bank, the amount called for in the warrant, and thereupon such warrant became and was carried as an asset of the bank and the same was the property of the bank. In so acquiring the warrants it was the intention of the bank to acquire such warrants as assets of the bank, and not to pay them.

"From time to time, only as directed by the president of the bank, who was also city treasurer, certain of the warrants of the city acquired by the bank out of its assets, and carried by the bank on its general ledger as a part of the bank's assets, would be charged to the proper accounts of the city, and

thereupon, and not until then, such warrants so charged to the accounts of the city were stamped 'paid' and were held by the bank for return, and the same were returned to the city when the city's passbooks should be balanced again.

"The National Bank of Cleburne carried and dealt with city warrants of the city of Cleburne, which had not been canceled and charged to the city's accounts, as it did with its other assets. * * *

"The books of the National Bank of Cleburne never showed an overdraft in any fund or account of the city of Cleburne. The bank never charged the city of Cleburne any interest on any overdraft.

"The books of the city as kept by the city secretary showed an overdraft in several funds, due to the fact that all warrants drawn by the city were charged by the secretary to the fund on which drawn before the warrant was delivered to the payee. Deducting all outstanding unpaid warrants charged on the books of the city, all funds in the city depository as kept by the city secretary showed credit balances at all times.

"The city had a passbook for each separate fund in the city depository, in which all deposits were entered by the depository. These books were balanced by the depository once a month, and at such times the depository returned to the city all paid warrants charged against the accounts of the city; such warrants being stamped 'paid.' "

The master reported adversely upon the above-mentioned contentions made in behalf of the appellant, and recommended the entry of judgment in favor of the city against the appellant for the sum of $124,747.36, with interest thereon at the rate of 6 per cent. per annum from October 17, 1921; said principal sum being the aggregate of the amounts credited to the several funds of the city as shown by the Cleburne Bank's books at the time of its failure, $177,600.82, less the sum of $52,853.46, the amount of city warrants held by the Cleburne Bank at the time of its failure. The court overruled exceptions to the master's report and rendered a decree against the appellant pursuant to the master's recommendation, the costs of the suit being adjudged against the appellant. That decree has not been complained of by any party to the cause other than the appellant.

[1] The bond sued on is specific in providing that the term of it "begins on the 20th day of November, A. D. 1920, and ends on the 20th day of November, A. D. 1921." There is nothing in its recital of the appointment of the principal as city depository or in any other provision of it to indicate that the liability of its makers for city funds deposited with the principal was intended to be limited to deposits made during the term for which the principal had been designated as city depository. On the contrary, by the unequivocal language of the condition of the bond the obligation incurred is to be null and void only "if the principal shall," not during the term of its recited designation as city depository, but "during the term of this bond, faithfully account for and pay on legal demand, all moneys deposited with it by or on behalf of said obligee, and shall not suspend payment during the term hereof." The language used fairly shows that the parties contemplated the continuance of the principal as city depository during the term of the bond and the deposit with the principal of city funds during the entire year ending November 20, 1921, and that it was intended that the surety should be liable to the extent of the amount of the bond for a failure of the principal faithfully to account for and pay on legal demand all such funds so deposited with it during that year. The court properly ruled against the above-mentioned contention of the ap-

pellant that it was not liable for city funds deposited after August 20, 1921. Pacific County v. Illinois Surety Co. (D. C.) 234 Fed. 97.

[2] It is not questioned that if the city warrants held by defendant banks other than the Cleburne Bank at the time of the latter's failure had theretofore been paid the amounts thereof could be charged or set off against, respectively, the balances credited on the Cleburne Bank's books to the several funds against which, respectively, those warrants were drawn. A controverted question is: Had or had not those warrants been paid when the Cleburne Bank failed? Each of those warrants was in effect a draft upon the particular fund out of which alone it was properly payable. The provision of the contract between the Cleburne Bank and the city as to the former furnishing the latter monthly and yearly statements of each separate fund, "showing the amount received and the amount paid out of the same," indicates that it was contemplated by the parties that a warrant was not to be regarded as paid until the amount of it was paid out of or charged against the fund upon which it was drawn. The methods pursued by the parties in acting under the contract point to the same conclusion. Nothing in the contract indicates that it was intended to have the effect of depriving the Cleburne Bank of the right to acquire city warrants and to hold or dispose of them as owner. The provision in regard to carrying the city's overdrafts did not obligate the Cleburne Bank to create such an overdraft whenever it had the power to do so as a result of its ownership of warrants against a particular fund to an amount in excess of that standing to the credit of such fund. The act of a bank or other party in acquiring a city warrant by paying with its or his own money to the warrant holder the amount it calls for is not a payment or extinction of such warrant prior to the amount of it being withdrawn from or charged against the fund upon which it was drawn, especially where the party so acquiring the warrant is the holder of the fund upon which it is drawn, and his payment for the warrant with his own money is not followed by any withdrawal from or charge against such fund of the whole or part of the amount of the warrant. It cannot properly be said that an obligation has been paid and discharged where the obligor has not parted with money or other thing of value for the purpose of discharging it. We conclude that the warrants in question had not been paid when the Cleburne Bank failed. Bardsley v. Sternberg, 18 Wash. 612, 52 Pac. 251, 524; New York Security & Trust Co. v. City of Tacoma, 21 Wash. 303, 57 Pac. 810; Town of Manitou v. First National Bank, 37 Colo. 344, 86 Pac. 75; Fisher v. City of Seattle, 55 Wash. 396, 104 Pac. 655; Toole v. First National Bank (Tex. Civ. App.) 168 S. W. 423. It follows that the court properly ruled against appellant's above-mentioned set-off claim.

[3] The court did not commit reversible error in awarding against the appellant the costs of the suit. It is not made to appear that there was any abuse of the court's discretion in adjudging the costs against the appellant, which was the unsuccessful litigant in the case. 2 Foster, Federal Practice (6th Ed.) § 457.

No reversible error being shown by the record, the decree appealed from is affirmed.