DALLAS COUNTY et al., Appellees, v. PERRY NATIONAL BANK et al., Appellees; FIDELITY & DEPOSIT COMPANY et al., Appellants.

NOVEMBER 22, 1927.

REHEARING DENIED MARCH 10, 1928.

*Stipp, Perry, Bannister & Starzinger*, for Fidelity & Deposit Company, appellant.

*Sampson & Dillon,* for Fidelity & Casualty Company, appellant.

*Blake Willis* and *Harry Wifvat,* for plaintiffs, appellees.

*Parrish, Cohen, Guthrie & Watters,* for receiver of Perry National Bank, appellee.

*Carr, Cox, Evans & Riley,* for American Surety Company, appellee.

KINDIG, J.—The principal proposition to be determined is whether or not liability on the depository bonds in question ceased at the expiration of the county treasurer's term, or whether, so far as concerns deposits made during the authorized period, responsibility of the sureties continued thereafter until the designated bank repaid the funds to said subdivision of the state or said official.

F. D. McKay was such officer for the years 1923 and 1924, duly elected, qualified, and acting. That two-year term began January 2, 1923. Thereafter, McKay, with the approval of the board of supervisors, appointed the Perry National Bank as the official depository for public funds. Accordingly, on January 3d and February 21st of said year, that institution presented depository bonds in the amount of $15,000 each, executed by itself, as principal, and the Fidelity & Casualty Company of New York and Fidelity & Deposit Company of Baltimore, Maryland, respectively, as sureties. These instruments were timely and properly approved. No time limit was specified in either; but early in the year 1924, there were filed by both appellants separate continuation certificates, purporting to extend the original bonds to January 1 and 2, 1925. Again, acceptance was legally made by the supervisors and the obligee.

In conformity with the privilege granted, deposits were made by appellee under the name of F. D. McKay, treasurer of Dallas County, Iowa, so that the balance on December 31, 1924, aggregated $19,377.37. McKay was re-elected, to succeed himself, and, on January 2, 1925, new qualification was made, and his bond sanctioned and indorsed by the county commissioners; but his accounts were not settled or ratified, because the check-

674

ers were working on the books, and bank difficulties were prevalent in the district. Meanwhile, additional appointment of the said bank was not made, nor was further "bond" given by it. Furthermore, said depositor drew checks on and received money from the banking concern in January, 1925, as follows: 2d, $1,000; 3d, $175 and $1,165.33; 5th, $.40 and $302.39; 8th, $500; 9th, $1,000; 12th, $217.79; 15th, $5,501.77 and $1,000; 19th, $5,056.54, $.40, and $334.36.

This use of said deposits was "for the specific payment of some obligation of the county," and not for the purpose of transfer. Afterwards, on the 20th day of said month, an order was drawn for $3,600, in order to transport that sum to the Adel State Bank, due to the fact that the "depository" refused to execute security for the ensuing two years. Said demand was rejected, and January 22, 1925, the drawee suspended business, and a receiver was later appointed.

Such balance is the subject of this suit.

I. Reversal is urged on the theory that: First, appellants' duty terminated when the expiration date of the "continuation certificates" arrived; and second, the withdrawals above listed were accomplished by a subsequent "treasurer,"—not the beneficiary of said undertakings, for, even though the individual man is one and the same, the "officials" are different. While, in the abstract, appellants' proposition may be correct, yet, under the facts and circumstances of this case, we are constrained to hold that the action of the district court is right. Those binding compacts are substantially identical, and contain, among others, this provision:

"The condition of these obligations is such that if the said Perry National Bank * * * shall well and truly pay to the treasurer of Dallas County on demand, all sums of money now or hereafter deposited in said bank by F. D. McKay, treasurer * * *, and hold said treasurer harmless, and shall now, and at all times hereafter, well, truly and sufficiently save and keep harmless, and indemnify the said treasurer against any loss, suits, damages or claims whatsoever, both at law and in equity, which may arise, or accrue at any time against said bank, and in favor of said treasurer, by or on account of said deposits, then this obligation to be void, otherwise in full force and effect."

Legislative enactment has provided for the "bond" under consideration. Code of 1924 stipulates:

"Section 7404. The county treasurer shall, with the approval of the board of supervisors as to place of deposit, by resolution entered of record, deposit state, county, or other funds in any bank or banks in the state to an amount fixed by such resolution * * *."

"Section 7405. Before such deposit is made, such bank shall file a bond with sureties to be approved by the treasurer and the board of supervisors in double the amount deposited, conditioned to hold the treasurer harmless from all loss by reason of such deposit or deposits * * *."

"Section 7406. Said bond shall be filed with the county auditor and action may be brought thereon either by the treasurer or the county as the board of supervisors may elect."

"Section 7407. Nothing done under the provisions of the five preceding sections shall alter or affect the liability of the treasurer or the sureties of his official bonds."

On several occasions we have held that a statutory "bond" cannot, by more or less phraseology, be added to or detracted from.  *Zapf v. Ridenour*, 198 Iowa 1006; *United States Fid. & Guar. Co. v. Iowa Tel. Co.*, 174 Iowa 476; *Schisel v. Marvill*, 198 Iowa 725; *Nebraska Culv. & Mfg. Co. v. Freeman*, 197 Iowa 720.

Liability of appellants in the premises must be measured by the standard of the legislation. Fundamentally, said act contemplates that, for the period of the "approval" named, "deposits" can be made by the treasurer. Equally true, then, must be the intent that, at least during the time specified in the "certificates of continuation," "deposits" could likewise be placed. It was during this interval that the "deposits" (which form the basis of this legal quarrel) were put into the bank. Business usage, as well as the letter and spirit of said written law, do not require that any part of said allotted "time" must be consumed in demanding and obtaining repayment. If, during the prescribed number of days, "deposits" are warranted, then, in logic, as well as law, the retraction and recall thereof must take place beyond that limitation and in the future. *United States Fid. & Guar. Co. v. City of Pensacola*, 68 Fla. 357 (67 So. 87); 18 Corpus Juris 589, Section 63. See

*County of Hall v. Thomssen,* 63 Neb. 787 (89 N. W. 393); *Board of County Com. v. Citizens' Bank,* 67 Minn. 236 (69 N. W. 912).

Fittingly, it was said in *United States Fid. & Guar. Co. v. City of Pensacola,* supra:

"The bond does not limit the time within which a demand for payment of drafts or checks drawn against the deposited funds shall be made * * *. The bond did not contemplate that all the moneys deposited to November 1, 1913 [time of bond expiration], should be demanded and paid during the period beginning with the date of the bond and ending November 1, 1913. The facts that the statute required the depositories to be designated for a period not exceeding one year, and that the designation referred to in the bond expired November 1, 1913, do not affect the obligation of the bond that the bank 'shall faithfully account for and pay over all moneys' deposited to November 1, 1913, even though the moneys were left on deposit after November 1, 1913."

II. Material at this juncture is Section 7412 of said Code, containing this language:

"* * * each county treasurer shall at all times keep all funds coming into their possession as public money, in a vault or safe, to be provided for that purpose, or in some bank legally designated as a depository for such funds."

Thus, were it not for the proceedings taken in the case at bar, said public property must necessarily have been kept in the vault. Through the process adopted, removal was permitted to the Perry National Bank, to be left there, not for a small or even a large share of the approved "time," but for the whole thereof. Return to said safe was not within the purview of the action of the lawmakers, until the lapse at least of the intermittence implied by the status created; and this is so, not under the doctrine that it is a personal bond, but granting its true character. Auditing was imperative, for assurance that the public "fund" ostensibly in the "depository" was really there, and subject to conveyance to the succeeding "treasurer." Opportunity is essential to effectuate this. Utility of operation renders vital the protection in this emergency. Otherwise, the "treasurer" would not be held "harmless from all loss by reason of such deposit or deposits."

Liability is not for "deposits" after the expiration of said

"bond," but those emplaced within the limits thereof. A reasonable "time" for such retirement is certainly allowed, and as to whether or not more is given, we do not decide.

Then, in view of the fact that the "treasurer" was beginning his new "term," and had not "settled" with the county, added to the delay produced by doubtful and fallen banks, we cannot say twenty days was unreasonably long.

III. By way of avoidance, it is insisted that proof is lacking that the conditions of the contracts were broken, due to the fact that the "old treasurer" has suffered no loss. Returning  again to Section 7405, we find that the contractual burden is "conditioned to hold the treasurer harmless from all loss by reason of such deposit or deposits." Upon his shoulders still rests the weight of bringing forth the "deposits" and making adjustment, in accordance with Sections 7408 and 7409 of said Code.

As said in *State v. Rhein*, 149 Iowa 76:

"It is the treasurer's duty to receive, safely keep, disburse, and account for all moneys payable to the county * * *. For the faithful performance of this duty he must give bond."

When this is done, he warrants that "he will render a true account * * *; that he will promptly pay over to the officer or person entitled thereto all moneys which may come into his hands by virtue of his office; that he will promptly account for all balances of money remaining in his hands at the termination of his office * * *." Section 1059, Code of 1924.

Consequently, if the "deposits" in said "depository" are not forthcoming, the mandates of said personal assumption cannot be met, and, except for the appellants' suretyship, there would come to said official "harm and loss by reason of such deposit or deposits."

IV. Argument is advanced to the effect that the "new treasurer" qualified and the supervisors "approved" his second  bond, and therefore, under Section 1057 of said Code, it must be conclusively presumed that the "deposit" was ratified and transferred from the "old" to the "new official." Wording of that section is:

"When the re-elected officer has had public funds or property in his control, under color of his office, his bond shall not

be approved until he has produced and fully accounted for such funds and property to the proper person to whom he should account therefor; and the officer or board approving the bond shall indorse upon the bond, before its approval, the fact that the said officer has fully accounted for and produced all funds and property before that time under his control as such officer.''

However, the presumption is directory and rebuttable. *Palmer & Seawright v. Woods,* 75 Iowa 402; *Boone County v. Jones,* 54 Iowa 699; *Carroll County v. Ruggles,* 69 Iowa 269. Indorsement and pretended approval are not final, if, in fact, such truth does not exist. *Palmer & Seawright v. Woods,* supra. Apparently, the items recovered, as above announced, were appropriated by the ''new treasurer;'' yet that does not mean that the residue was assigned to him, in the face of the record to the contrary. Conclusive evidence was offered at the trial, showing that the ''old treasurer'' was still unreleased, and no testimony was introduced to indicate, under the circumstances, that the bank had delivered the controverted ''deposits'' to the ''new treasurer.''

Other matters are presented, but they are not of such material character as to change the result.

The action of the district court in entering judgment against appellants, as sureties, was proper, and is affirmed.— *Affirmed.*

EVANS, C. J., and STEVENS, FAVILLE, and WAGNER, JJ., concur.