UNITED STATES FIDELITY AND GUARANTY COMPANY
v. STARK, RECEIVER.

[No. 15,128. Filed March 10, 1936. Rehearing denied
May 14, 1936.]

*Hays & Hays, Alonzo C. Owens, John S. Taylor* and *J. Olias Vanier,* for appellant.

*Jesse Bedwell,* for appellee.

WIECKING, J.—This is an action brought by the appellee against appellant to recover on a bond executed by appellant to secure deposits made by appellee in the Peoples National Bank and Trust Company of Sullivan, Indiana, for losses occurring after the term of the bond. The issues were formed by an amended complaint in one paragraph, to which the appellant demurred and after such demurrer was overruled appellant filed an answer in general denial closing the issues. The cause

was submitted to the court for trial without the intervention of a jury. All of the facts were stipulated. The court found for the appellee and entered judgment upon his finding in the sum of $3,272.20. Appellant seasonably filed a motion for new trial which was overruled and now prosecutes its appeal to this court assigning as error (1) that the court erred in overruling the appellant's motion to require appellee to make his amended complaint more specific, (2) the court erred in overruling appellant's motion to require appellee to state the facts to sustain the conclusions pleaded in appellee's amended complaint, (3) the court erred in overruling appellant's demurrer to appellee's amended complaint, and (4) the court erred in overruling appellant's motion for new trial.

The facts necessary to a decision of this case are as follows: The appellee as receiver of the First State Bank of Shelburn designated the Peoples National Bank and Trust Company of Sullivan, Indiana, as depository for the funds of such receivership. The said National Bank with appellant as surety executed a bond to the plaintiff in the penal sum of Twenty-five Thousand Dollars. The term of the bond began on the 18th day of January, 1929, and ended on the 18th day of January, 1930. The pertinent parts of the bond were as follows:

"Now, Therefore, the condition of this obligation is such that if the Principal shall during the term of this bond faithfully account for and pay on legal demand all moneys deposited with it by or on behalf of the said Obligee, and shall not suspend payment during the term hereof, this obligation shall be null and void, otherwise to remain in full force and effect. . . .

"SEVENTH. This obligation may be continued for any subsequent period by Continuation Certificate, signed and sealed by the Surety."

No funds were deposited by appellee until after the execution of this bond, but thereafter and up until Jan-

uary 18, 1930, the appellee deposited $27,127.33. No demand or refusal during this period is alleged or shown by the evidence. After January 18, 1930, appellee made no further deposits to his account except interest accumulations of $2,120.15. On the 27th day of June, 1932, the principal became insolvent and closed its doors and at that time the appellee had on deposit the sum of $5,342.35, all of which had been deposited between February 7, 1929, and January 18, 1930, except the sum of $2,120.15 of interest credited to the account. After the closing of the bank in June, 1932, demand was made on the National Bank for payment, which was refused, and notice then served on appellant, which also refused payment. None of said sum of $5,342.35 had been paid to appellee by the National Bank or its receiver or any other person at the time of trial.

The sole question presented to this court by the assignment of error is the liability of the appellant under the bond for loss of money on deposit during the term of the bond, although the loss occurred more than two years and five months after the end of the term of the bond.

The obligation of the bond was "that *if the Principal shall during the term of this bond faithfully account for and pay* on legal demand all moneys *deposited with it by or on behalf of the said obligee and shall not suspend payment during the term hereof . . .*" (Our italics.)

It is true that the appellant here was a surety for hire and as such its contract will be strictly construed against it and in favor of the indemnity. It is equally true that this contract must be interpreted by the ordinary rules of law. *Pacific County et al.* v. *Illinois Surety Co.* (1916), 234 Fed. 97; *Gilmore and P. R. Co.* v. *U. S. Fidelity and Guaranty Co.* (1913), 208 Fed. 277.

The obligee of this bond was not such an officer as comes within the various depository statutes. He was an officer of the court, it is true, but the bond in question was not given in pursuance of any statute requiring it or as far as the record discloses by any order of court. The liability, therefore, is in the nature of a private bond and the company could make such a contract of indemnity and limit its provisions in any way it saw fit, unhampered by statutory restrictions. *U. S. Fidelity and Guaranty Co.* v. *Poetker* (1913), 180 Ind. 255, 102 N. E. 372. The language of the bond is plain and unambiguous and, therefore, should be construed according to the reasonable and ordinary meaning of such language. *Sparta State Bank* v. *Myers* (1931), 202 Ind. 553, 177 N. E. 597. No real question of construction can arise under such circumstances. *Hooper-Mankin Fuel Co.* v. *Chesapeake and O. R. Co.* (1929), 30 Fed. (2d) 500, 502. Here the agreement appears to us to be clear. The limit of the liability as to time is the 18th day of January, 1930, if we give effect to every part of the contract. The language stating the term of the bond was definite:

"The term of this bond begins on the 18th day of January, A. D. 1929, and ends on the 18th day of January, A. D. 1930."

The bond itself also provided for extension and continuation by agreement in the following language:

"This obligation may be continued for any subsequent period by Continuation Certificate, signed and sealed by the Surety."

The evidence, however, shows no extension or continuation but it is agreed that the term of the bond expired on January 18, 1930.

It is equally true that the language of the bond stating the matters for which the surety should be liable is clear and definite, that is, that the principal would pay

on legal demand and not suspend payment during the term of the bond. There is no contention that the principal on the bond ever refused to pay on legal demand or suspended payment until long after the term of the bond. On the contrary, the evidence shows clearly that the principal continued to pay promptly until long after January 18, 1930. On that date there was on deposit with the principal to the obligee's account the sum of $27,127.33, the greater part of which was thereafter withdrawn until of that sum only $3,272.20 remained at the time the principal closed and suspended payment.

The appellee cites to us and stresses with great force the case of *United States Fidelity and Guaranty Co. et al.* v. *Poetker, supra; American Surety Co.* v. *Pangburn* (1914), 182 Ind. 116, 105 N. E. 769. Those cases do not deal with depository bonds but with statutory bonds, the first concerning a bank cashier and the second a county treasurer. These cases deal only with the rule of liberal construction against the surety in case of ambiguity in the bond. As pointed out above we fail to find any ambiguity. The appellee also cites as controlling herein the cases of *Dallas County et al.* v. *Perry Nat. Bank et al.* (1928), 205 Iowa 672, 216 N. W. 119; *Hale County, Texas et al.* v. *American Indemnity Co. et al.* (1933), 63 Fed. (2d) 275; *Fidelity and Deposit Co., etc.* v. *The City of Cleburne et al.* (1924), 296 Fed. 643; and *United States Fidelity, etc., Co.* v. *City of Pensacola* (1914), 68 Fla. 357, 67 So. 87. The first of such cases deals with a deposit controlled by the statutes of Iowa with regard to the deposit of public funds. The term "during the term of the bond" does not appear in the contract, but the obligation was for repayment without regard to time and the Supreme Court of Iowa so properly construed the bond. The Hale County, Texas, case was in regard to a bond controlled by the statutes of Texas with regard to public deposits and was to the

effect that the depository would "perform all the duties and obligations devolving upon it by law" and "turn over to its successor" all funds coming into its hands as such depository. Obviously, these two cases cannot be controlling here. The third case above mentioned, that of *Fidelity and Deposit Co.* v. *City of Cleburne, supra,* not only does not support the contention of the appellee, but on the contrary clearly supports the position of the appellant. In that case the language of the bond was the same as in the instant case, running from November 20, 1920, to November 20, 1921. The original depository contract of the city and the principal on the bond expired in August and was renewed. The bank failed on October 17, 1921, *within the term of the bond.* The court very properly points out that the liability of the bond was *for failure to pay on demand during the term of the bond,* in the following language (p. 647) :

> "The bond sued on is specific in providing that the term of it 'begins on the 20th day of November, A. D. 1920, and ends on the 20th day of November, A. D. 1921.' There is nothing in its recital of the appointment of the principal as city depository or in any other provision of it to indicate that the liability of its makers for city funds deposited with the principal was intended to be limited to deposits made during the term for which the principal had been designated as city depository." (This term expired August 20, 1921.) "On the contrary, by the unequivocal language of the condition of the bond the obligation is to be null and void only 'if the principal shall,' not during the term of its recited designation as city depository, but *'during the term of this bond,* faithfully account for and pay on legal demand, all moneys deposited with it by or on behalf of said obligee, and shall not suspend payment during the term hereof.' The language used fairly shows that the parties contemplated the continuance of the principal as city depository during the term of the bond and the deposit with the principal of city funds during the entire year ending November 20, 1921, and that it was intended that the sur-

ety should be liable to the extent of the amount of the bond *for a failure of the principal faithfully to account for and pay on legal demand* all of such funds so deposited with it during that year. . . . *Pacific County* v. *Illinois Surety Co.* (D. C.), 234 Fed. 97." (Our italics.)

With regard to the last case mentioned above as relied upon by appellee, *United State Fidelity, etc., Co.* v. *City of Pensacola,* we also wish to discuss the principal case relied upon by appellant for reversal of the instant case, that is, *Pacific County et al.* v. *Illinois Surety Co., supra.* The latter case clearly distinguishes the City of Pensacola case from the one here involved. The Pacific County case, we believe, is clearly in point. The type of bond involved is similar and the observations of the court are clear and direct. In that case the bond was given for a period of one year commencing July 1 ,1914, and ending July 1, 1915. The bank suspended payment and closed July 19, 1915, or eighteen days after the end of the term. The contention of the parties was the same as in the instant case. The essential parts of the bond in that case were as follows (p. 98) :

" 'If the said principal hereinbefore named shall, from noon on the 1st day of July, 1914, to noon of the 1st day of July, 1915, in due and ordinary course of business promptly pay to the said treasurer . . . upon demand . . . all moneys and proceeds . . . which have been or shall hereafter be deposited . . . by or on behalf of the said treasurer, . . . then this obligation shall be void. . . .' "

The court then decided the question before it on the language of the bond and distinguished the Florida case relied upon by appellee in this case as follows (p. 98) :

"The language employed seems to be clear, and capable of conveying but one idea, and that is the limit of liability to the 1st day of July, 1915, and giving effect to every part of the contract. *United States Fidelity and Guaranty Company* v. *Board of*

*Commissioners,* 145 Fed. 144, 148, 76 C. C. A. 114. And applying the same rules to this as any other contract (*American Bonding Co.* v. *Pueblo Investment Co.,* 150 Fed. 17, 24, 80 C. C. A. 97, 9 L. R. A. (N. S.) 557, 10 Ann. Cas. 357), the intention of the parties appears to be conclusively established. The case of *United States Fidelity & Guaranty Co.* v. *City of Pensacola,* 68 Fla. 357, 67 South. 87, relied upon by plaintiffs, is readily distinguished from the case at bar, in this: That liability in that case was not limited, but the defendant obligated itself to account and pay over all moneys which may be deposited within the time, and was not merely to insure the payment by the city of its deposits during the contemplated period, but to pay over all moneys received by the bank by deposits of the city during the stated period, and this obligation continued though the time had expired during which deposits could be made under the obligation of the bond; whereas, in the instant case, the life of the bond is fixed on its face, and in view of the express stipulation of the bond it cannot be reasonably contended that liability would extend for an indefinite period during which the funds would be under the protection of the operation of the bond, and until the plaintiffs saw fit to withdraw them. *United States Fidelity and Guaranty Co.* v. *American Bonding Co.,* 31 Okl. 669, 122 Pac. 142."

Applying the same rule in the instant case in line with all the foregoing discussion, we hold that the appellant's demurrer to the amended complaint should have been sustained. The court below also erred in overruling appellant's motion for new trial as the decision of the court was contrary to law.

With regard to the other two specifications in the assignment of error, concerning the ruling of the trial court on the two motions, we find no error. These ▮▮▮ motion were interposed only pursuant to Sec. 2-1005, Burns' Annotated Statutes 1933, §155, Baldwin's 1934. This section of the code limits its application to conclusions necessary to make the pleading sufficient and does not consider every conclusion pleaded

as one necessary to sustain the pleading. *Tecumseh, etc., Mining Co.* v. *Buck* (1922), 192 Ind. 122, 135 N. E. 481. The overruling of a motion to make a complaint more specific is only reversible error when the party making the motion is prejudiced by such ruling. In this case, as pointed out above, the facts were all stipulated by the parties. Under such circumstances, the appellant could not have been prejudiced by the rulings of the court on the two motions in question in such a manner as to make reversible error. *Vulcan Iron, etc., Co.* v. *Electro Mining Co.* (1913), 54 Ind. App. 28, 99 N. E. 429, 100 N. E. 307; *Cline* v. *Rodabaugh* (1933), 97 Ind. App. 258, 179 N. E. 6; *Carter* v. *Richart* (1917), 65 Ind. App. 255, 114 N. E. 110.

The judgment of the trial court is reversed with instructions to grant the appellant's motion for new trial and to sustain appellant's demurrer to appellee's amended complaint and for other proceedings consistent with this opinion.

Bridwell, J., not participating.

Wood, J., dissents.

### DISSENTING OPINION.

WOOD, J., DISSENTING.—I am unable to agree with the result reached in this appeal by a majority of my associates, insofar as it pertains to liability on the bond before the court.

The facts were all stipulated and those necessary for a consideration of the questions presented may be summarized as folows:

Continuously, from January 25, 1929, to the date of the trial of this cause in the lower court, pursuant to an order of the Sullivan Circuit Court, Herschel V. Stark was the duly appointed, qualified and acting receiver of the First State Bank of Shelburn, Indiana. As such receiver, the appellee designated Peoples National

Bank and Trust Company of Sullivan, Indiana, as a depository for funds coming into his hands as receiver. To secure the payment of such receivership funds as might be deposited with it, on February 7, 1929, the Peoples National Bank and Trust Company as principal and the appellant as surety for a valuable consideration executed and delivered its bond to the appellee in the penal sum of $25,000. Among other conditions this bond contained the following: "Whereas, the said Obligee has designated the said Principal as the depository of funds as Receiver of the First State Bank, Shelburn, Indiana.

"Now, Therefore, the condition of this obligation is such that if the Principal shall during the term of this bond faithfully account for and pay on legal demand all moneys deposited with it by or on behalf of the said Obligee, and shall not suspend payment during the term hereof, this obligation shall be null and void, otherwise to remain in full force and effect.

"Provided, However, and upon the following conditions:

"First. The term of this bond begins on the 18th day of January, A. D. 1929, and ends on the 18th day of January, A. D. 1930."

At the close of business on January 18, 1930, there was on deposit in said designated depository the sum of $27,127.33 of the funds of the receivership, all of which money had been deposited during the period of time from February 7, 1929, to January 18, 1930, and all of which was subject to withdrawal upon demand of the appellee. From and after January 18, 1930, to the beginning of this action the appellee made no further deposits of money in said designated depository except interest accumulations credited to his account from that date amounting to the sum of $2,120.15. On June 27,

1932, Peoples State Bank and Trust Company became insolvent. At that time the appellee had a balance on deposit in said bank in the sum of $5,342.35 all of which, except the item of interest had been deposited in said designated depository between the dates of February 7, 1929, and January 30, 1930, no part of which sum was ever repaid to appellee. June 29, 1932, appellee demanded from said designated depository the withdrawal of the balance of the funds belonging to said receivership, which demand was refused. Immediately thereafter, and on the same date, appellee served a verified written notice upon appellant of the refusal of said designated depository to pay the balance due him in such receivership fund, and demanded payment thereof from appellant, which demand was refused.

Since the ruling of the trial court on the demurrer, and the motion for a new trial for the causes discussed in appellant's brief present substantially the same questions, they will be considered together.

The question is, whether the appellant's liability on the bond is limited to defalcations of the Peoples National Bank and Trust Company, in the performance of the terms of its contract with the appellee, for the security of the performance of which contract the bond was given, occurring during the period of one year from January 18, 1929, to January 18, 1930, or whether it is liable for defalcations of the bank in the performance of said contract, occurring after the year designated in the bond, for deposits of money made in the bank by appellee, between the above dates.

It is agreed between the parties that the appellant is a surety for hire, that the bond under consideration is not an official but a private bond, and that in ascertaining the rights and liabilities of the respective parties thereunder this court is controlled by certain well established rules of construction. Thus a surety for

profit is not "a favorite of the law." Its status is rather that of an insurer and if such a contract is fairly open to two constructions, that construction will be adopted which is most favoroble to the person intended to be protected by the bond. *American Surety Co.* v. *Pangburn* (1914), 182 Ind. 116, 105 N. E. 769; *Title, etc., Co.* v. *State ex rel., etc., Bank* (1916), 61 Ind. App. 268, 109 N. E. 237, and authorities cited. The extent or limitation of liability assumed by the execution of a bond is fixed by the legal import of its terms which should be construed in accordance with the reasonable and ordinary meaning of the language employed. The wording of the bond should not be subjected to a strained construction for the purpose of freeing a surety from an obligation nor for the purpose of fastening one upon it. *Sparta State Bank* v. *Myers* (1931), 202 Ind. 553, 177 N. E. 258; *Shaver* v. *Kappellas* (1925), 83 Ind. App. 338, 146 N. E. 858; *United States, etc., Co.* v. *Board of Commissioners* (1906), 145 Fed. 144; *Delaware, etc., Co.* v. *Burkhard* (1885), 43 N. Y. (36 Hun.) 57. "It is, of course, to be conceded that a surety company may, in dealing with a private citizen, with a free hand, unhampered by statutory restrictions, make such a contract of suretyship as it chooses and guard and limit its liability by as many provisions as it pleases and if the one for whose benefit it is given accepts it in good faith, the surety is bound only according to the terms of the bond. But even in such a case the rule of *strictissime juris,* which has been invoked for the benefit of private individual sureties who sign for accommodation and not for compensation, and which requires a strict construction of the contract in their favor and a resolution of all doubts in their favor, does not apply to the involved contract of a surety company which becomes surety for profit. In the latter case the rule is reversed and the contract, when there is room for construction,

is to be construed most strongly against the surety and in favor of the indemnity which the obligee had reasonable ground to expect." *United States Fidelity, etc., Co.* v. *Poetker* (1913), 180 Ind. 255, 263, 102 N. E. 372. The above rules of construction are controlling whether the bond under investigation is an official or private bond. However, by the application of these rules, there is no fixed result to be attained in the construction of any particular bond, together with the language of the statute requiring the bond, if an official bond, and the terms and conditions of the contract, the performance of which the bond is given to secure, if it is a private bond. *Walker, etc., Co.* v. *American, etc., Co.* (1922), 60 Utah 435, 211 Pac. 998. It is proposed to approach a consideration of the respective rights and liabilities under the bond in suit with these rules in mind.

The majority opinion assumes that the language of the bond is so clear and explicit that it is not subject to interpretation for the purpose of determining the intention and meaning of the parties thereto or their respective rights and liabilities thereunder. The language of the bond does not justify this assumption. It is true the bond does provide "that if the principal shall during the term of this bond faithfully account, etc., . . . and shall not suspend payment during the term hereof" and that it should begin on January 18, 1929, and terminate on January 18, 1930. If this was an official bond, in order to ascertain the intent and purpose of the parties, the court would construe the language used in the bond in connection with the terms of the statute requiring its execution. It must follow as a necessary conclusion that even though the bond in the instant case is a private bond, in order to ascertain its intent and purpose, the court must construe the language used in the bond in connection with the terms of the contract existing between the appellee and the depository bank for the secu-

rity of the faithful performance of which contract the bond was given.

· To hold as the majority opinion does, that it was intended that the appellee would have the right and that it was the intent of the parties, that he should have the right to create the relation of debtor and creditor between himself and the depository bank; that he could deposit money in the bank up until, say, one o'clock in the afternoon of January 18, 1930, and that if he wanted to secure the protection of the bond in suit he must go to the bank sometime during the course of the banking hours on the afternoon of January 18, 1930, and demand payment or an accounting of all moneys deposited in the bank, in this instance over $25,000, otherwise he forfeited the protection of the bond seems preposterous. On the other hand, the regular, customary and usual course of business would indicate, that under the terms of the bond and the contract, the performance of which it was given to secure, the appellee had the right and it was the intent of the parties that he should make deposits of money in the bank during the entire period of one year, and that if, thereafter, but during the statutory period of limitation the depository bank failed to account for and pay on legal demand or should suspend payment, that under such circumstances the appellant would indemnify appellee for any money which he had deposited in the bank, not exceeding the sum of $25,000 between January 18, 1929, and January 18, 1930. Such a conclusion would be in accord with business experience and practice and with what is conceived to be the better reasoned authorities.

It appears from the facts that the Peoples National Bank and Trust Company was designated by appellee as depository for funds coming into his hands as receiver. Before depositing any funds in the bank, thereby establishing the relation of debtor and creditor between

himself and the bank appellee demanded and received the bond here involved, securing the performance of the contract on behalf of the bank as such designated depository. All deposits made in the bank by appellee were made between January 18, 1929, and January 18, 1930, and not otherwise, so it is reasonable to assume that it was the execution and delivery of the bond by appellant which induced the appellee to deposit money in the bank and thus establish the relation of debtor and creditor between himself and the bank. It is also reasonable to assume that it was the fulfillment of this contract of debtor and creditor created between the bank and appellee by the deposit of receivership money in said bank which the bond was given to secure, and which the appellant agreed should be fulfilled when the bond was executed by it. That this was the intention and purpose of the appellee in demanding and of the appellant in executing the bond cannot be doubted. At the end of and within the year, neither the bank nor appellant accounted for and paid the money so deposited, by appellee, and the relation of debtor and creditor created during the year for which the bond was given was not terminated during that period but still exists.

Under all the circumstances leading up to and attending the execution and acceptance of the bond, it is not reasonable to assume that either appellant or appellee thought or expected that the relation established between the bank and appellee by the deposit of money therein would be terminated January 18, 1930, neither the facts as stipulated nor the wording of the bond justify such a conclusion. On the contrary, it must have been contemplated, that for the period of the bond, deposits could and would be made in the bank by appellee and it was only during that period that deposits were made. Business usage, as well as the intent and purpose of the contract, the performance of which the bond was

given to secure, do not require that any part of the al-loted time must be consumed in demanding and obtain-ing repayment of the deposits. "If during the pre-scribed number of days, 'deposits' are warranted, then, in logic as well as law, the restriction and recall thereof must take place beyond the limitation and in the fu-ture." *Dallas County* v. *Perry, etc., Bank* (1927), 205 Iowa 672, 216 N. W. 119; *Fidelity and Deposit Co.* v. *City of Cleburne* (1924), 296 Fed. 643.

The bond in the instant case provides, that the bank shall "during the term of this bond *faithfully account for and pay* on legal demand all moneys deposited, etc." (Writer's italics.) "The terms of the statute and the intention of the parties as expressed in the bond govern as to the duration of the sureties' liability. A continu-ing obligation for no definite and fixed period is sub-ject to termination at any time by either party; the surety may terminate it by giving notice. Where the obligation of a bond is for a definite period, the sureties are ordinarily discharged from further liability upon the expiration of the period specified, or on the giving of a new bond, *unless the obligation is also to account for and pay over moneys deposited within that period, in which case the liability continues as to the deposits made during the term of the obligation until they are repaid.*" (Writer's italics.) 18 C. J., sec. 63, p. 589. The language of this bond brings it within the last clause of the rule above quoted.

In the case of *Equitable, etc., Co.* v. *Board, etc.* (1917), 186 Ind. 650, 116 N. E. 650, 117 N. E. 860, the appellee recovered judgment against appellant as surety on a public depository bond from which appellant ap-pealed. It was agreed that the provisions of the Public Depository Law were considered a part of the bond just as fully as though they were expressly stated in the in-strument. The contention was therefore made, that

since the law definitely fixed the term of the depository at two years, and it was required to execute a new bond within five days after notice of its re-designation as depository which it refused to do, appellant was not liable for loss sustained because of failure of the depository bank, in this case sixteen days, after the expiration of the term for which the bond was given; that the failure of the bank to give a new bond operated to divest the institution of its character as a public depository and the act of the officers in permitting public funds to remain in the bank after the time prescribed for filing the new bond was in effect a selection of the bank as their depository and they were responsible for the loss. Answering this contention our Supreme Court said (p. 652) : "We concede that this reasoning would be sufficient to relieve appellant as against the loss of any new deposits made after the expiration of its principal's term as public depository, but no such deposits were made. The entire loss sustained by the township represents funds which were placed in the bank during the two-year period covered by the bond and that instrument obligates appellant to see that its principal 'shall faithfully and safely keep, preserve, account for, pay over and deliver without discount or deduction of any kind therefrom, whenever the same are, or any part thereof is, lawfully demanded, all the public money and effects, and each and every part thereof, which have been, now are, or which may be hereafter deposited with or received by said principal . . ., during its continuance as such depository.' The deposit of public moneys with the bank created the relation of debtor and creditor between it and the township, which relation could be dissolved only by the payment or discharge of the debt and that at no fixed time, but whenever the same should be lawfully demanded. The authorities are clear on the proposition that as to deposits made during the term of

the bond, the liability of appellant, as surety, would continue until all the money so received by the bank had been paid to the township or its order." See also *Board Commrs. Redwood Co.* v. *Citizens Bank, Redwood Falls* (1897), 67 Minn. 236, 69 N. W. 912; *Hall County* v. *Thomssen* (1902), 63 Neb. 787, 89 N. W. 393; *Barnes* v. *Cushing* (1901), 168 N. Y. 542, 61 N. E. 902; *Fidelity, etc., Co.* v. *Wilkinson County* (1915), 109 Miss. 879, 69 So. 865; *Fidelity, etc., Co.* v. *City of Cleburne, supra.*

In *Hale County* v. *American, etc., Co.* (1933), 63 Fed. (2nd) 275, suit was brought upon a depository bond given for a period of two years ending April 9, 1930. The depository bank was closed September 12, 1930. It was contended by the surety that it was absolved from liability on the bond because its terms had not been breached previous to April 9, 1930. The bond provided that the bank should faithfully do and perform all duties and obligations devolving upon it by law as a county depository and should faithfully keep and account for all funds deposited. In holding its contention untenable the court said: "We do not think that the depository accounts for the funds deposited by a mere admission on its books at the end of the term that the sum is due, coupled with an ability then to pay if demanded. The accounting meant by the statute includes payment or tender thereof, and these bonds so interpret it by expressly promising payment. If payment was not or could not be made on the last day, the duty to pay remained until performed unless some matter of discharge is shown, and the sureties remain bound therefor. It is not enough that all checks and interest shall have been paid up to April 9th, the period fixed by the bond. The obligations of the bond do not cease on that date. *The sureties are not liable for deposits made thereafter, but they are bound for an account of those theretofore received.* (Writer's italics.) *United States* v. *Stone*, 106

U. S. 525, 1 S. Ct. 287, 27 L. Ed. 163; *Bryan* v. *United States*, 1 Black. 140, 17 L. Ed. 135; *United States* v. *Nicholl*, 12 Wheat. 505, 6 L. Ed. 709. The depository must not only pay checks and interest during the term of the bond, but must at or after its expiration account for all the money remaining as expressed by the statute, or turn it over to its successor as expressed by the bond. Thus in *Smith* v. *United States*, 170 U. S. 382, 18 S. Ct. 626, 630, 40 L. Ed. 1074, where the bond was to faithfully disburse and honestly to account for moneys it was said: 'There may have been no breach of the bond at the time of his removal from office, but the liability . . . to account remained, and the bond continued in force until he had fully accounted, and thus had fulfilled all the conditions of his bond.' " And continuing its opinion the court further said: "But they contemplate also a full repayment either in the honoring of checks or in a settlement with a duly qualified successor, or, if none, with the treasurer of the county. The sureties are not discharged as to the unpaid balance at the end of the term because there had been no demand and refusal to pay."

In *U. S. Fid. & G. Co.* v. *Pensacola* (1914), 68 Fla. 357, 67 So. 87, suit was brought on a depository bond beginning on the first day of November, 1912, and ending on the first day of November, 1913. It provided that the depository should faithfully account for and pay over all moneys deposited with it. The depository bank suspended payment in December, 1913. In that case as in this case, the surety insisted that its liability was terminated on November 1, 1913. The court refused to adopt appellant's position saying (p. 362) : "The obligation was not merely to insure or secure the payments of warrants drawn by the city on its deposits during the contemplated period, but to *pay over* all moneys received on deposit by the bank from the city during the

stated period. The obligation to pay over all moneys deposited during the contemplated period continued though the time had expired during which deposits could be made under the protection of the bond.

"The bond did not contemplate that all the moneys deposited to November 1st, 1913, should be demanded and paid during the period beginning with the date of the bond and ending November 1st, 1913. The facts that the statute required the depositories to be designated for a period not exceeding one year, and that the designation referred to in the bond expired November 1st, 1913, do not effect the obligation of the bond that the bank *'shall faithfully account for and pay over all moneys'* deposited to *November 1, 1913, even though the money were left on deposit after November 1, 1913.*

"In effect the obligation of the defendant is that the bank 'shall faithfully account for and pay over all moneys which may be deposited with it' by the city from the date of the bond to November 13th, 1913; and this obligation continues after November 1st, 1913, until all the moneys deposited to November 1st, 1913, by the city with the bank have been 'faithfully accounted for and paid over' or until the obligation is extinguished by the parties or by operation of law." (Writer's italics.)

In the case of *Davis, Rec.* v. *Copeland* (1876), 67 N. Y. 127, Copeland gave a bond to the Ocean National Bank on December 15, 1870, conditioned as follows: " 'The condition of the above obligation is such, that if the said W. F. Gleason shall well and truly make up and pay within five days after maturity thereof any paper discounted for his account in said bank, together with interest and costs of protest and expenses thereon, and shall within the same time make good any and all checks certified for or paid by said bank for him, and shall save said bank harmless from all damages by reason of having an account therein, this bond shall be void, other-

wise in full force and virtue. *This bond to be binding for one year only from date."* Sometime prior to the expiration of the year, the bank discounted a bill of exchange and a promissory note for Gleason, both of which were payable after the expiration of the year and were not paid at maturity. Davis, as receiver of the bank, recovered judgment on the bond from which Copeland appealed. *This was a private bond.* In affirming the judgment the court said (p. 128) : "The object of the bond in suit evidently was to provide for Gleason a credit at the bank on account of paper discounted for his benefit and checks certified for or paid by the bank for him, *and it should be construed having in view the purpose which it was designed to promote.* A strict interpretation would limit the liability of the defendant to a single year, while as a specialty it was obligatory for twenty years. This is not claimed, however, and the limitation that it was to be binding one year only from the date, evidently did not relate to the time when the paper discounted might mature, but to the time when it was discounted and to the certification and payment of the checks within the period named. It is apparent that to this extent the indemnity was intended to be given and was so understood by Gleason, the bank and the defendant. Gleason desired accommodation at the bank during the year, and the bank was willing to extend it to him for that period upon the strength of the guaranty contained in the bond executed by the defendant. *If the accommodation was limited to such paper only as became due during the year, the benefits to be derived from the same would be restricted to a very narrow compass and would confer comparatively but little advantage. All paper becoming due after the expiration of the year would be excluded as beyond the terms of the guaranty, and it is unreasonable to suppose that it was the intention of the parties thus to circumscribe and*

*limit the effect of the bond. In fact, it would be contrary to the ordinary course of business, in dealings of this character, to assume that anything else was intended than to fix a period within which the transaction of the parties were to take place without regard to any other matter, and no other construction is to be implied unless the language employed is such as to be susceptible of no other interpretation."* (Writer's italics.)

In support of its position appellant has cited the case of *United States, etc.,* v. *Williams* (1909), 96 Miss. 16, 49 So. 742. The bond in this case was given to the employer to guarantee him against loss through dishonesty of an employee. The bond provided that defalcations or misconduct by the employee must be discovered and notice given to the surety within six months from the date of the expiration of the time limit set in the bond. The court held in order to establish liability on the bond the employer was required to discover and give notice of the defalcation within a period of six months as provided in the bond. The principle as announced as applied to the facts before the court was in harmony with most decisions in parallel cases but it is not controlling in the instant case.

Appellant also cites *United States F. & G. Co.* v. *American Bonding Co.* (1911), 31 Okla. 669, 122 Pac. 142; *Pacific County* v. *Illinois Surety Co.* (1916), 234 Fed. 97, and *Village of Argyle* v. *First, etc., Bank* (1928), 175 Minn. 482, 221 N. W. 869, where, in each instance, the bond in litigation was a public depository bond, as supporting its contention. The conditions contained in the bonds in these cases and the circumstances of their execution are so different from those in the case at bar that they cannot be regarded as controlling precedents in this case.

The writer of this opinion cannot agree with the

interpretation placed upon the case of *Fidelity, etc., Co. v. Cleburne* (1924), 296 Fed. 643, in the majority opinion. The bond involved was a public depository bond, given by the National Bank of Cleburne on November 20, 1920, as designated public depository for funds of the city of Cleburne pursuant to the terms of a proposal submitted to the city by the bank, which depository contract was entered into August 20, 1919, continued for a period of two years or to August 20, 1921, when it was renewed. The first depository contract was in force when the bond above referred to was executed. The terms of this bond provided that it should be in force for the term of one year. Its language in some respects was identical with the language in the bond under consideration. The bank failed October 17, 1921, while the bond was still in force. The bonding company contended that since the depository contract which was in force when the bond was given on November 20, 1920, expired on August 20, 1921, and that a new depository contract was entered into on that date, that therefore it was not liable for money deposited under said new contract and up to October 17, 1921, when the bank failed.

It was in denial of this contention that the court used the language quoted in the majority opinion of this court. The facts in that case and in this case are not analagous, so the question confronting this court was not there decided. But the language used by the court in disposing of the bonding company's contention in the Cleburne case lends support to the position contended for, in this opinion, for the court said (p. 647) : "The language used fairly shows that the parties contemplated the continuance of the principal as city depository during the term of the bond and the deposit with the principal of city funds during the entire year ending November 20, 1921, and that it was intended that

the surety should be liable to the extent of the amount of the bond for a failure of the principal faithfully to account for and pay on legal demand all such funds so deposited with it during that year."

In the case of *Pacific County* v. *Illinois Surety Co., supra,* cited and relied upon as sustaining the result reached in the majority opinion, the bond in question did not obligate the bonding company to account for and pay over all moneys which might be deposited within the period of the bond, but was merely to insure the payment to the city of its deposits during the contemplated period. In its opinion in that case the court, in distinguishing it from *United States, etc., Co.* v. *City of Pensacola, supra,* said (p. 98) : "The case of *United States Fidelity & Guaranty Co.* v. *City of Pensacola,* 68 Fla. 357, 67 So. 87, relied upon by plaintiffs, is readily distinguished from the case at bar, in this : The liability in that case was not limited, but the defendant obligated itself to account for and pay over all moneys which may be deposited within the time, and was not merely to insure the payment by the city of its deposits during the contemplated period, but to pay over all moneys received by the bank by deposits of the city during the stated period, and this obligation continued though the time had expired during which deposits could be made under the obligation of the bond; whereas, in the instant case, the life of the bond is fixed on its face, and in view of the express stipulation of the bond it cannot be reasonably contended that liability would extend for an indefinite period during which the funds would be under the protection of the operation of the bond, and until the plaintiffs saw fit to withdraw them."

The judgment should be affirmed.